54 U.S. 218
 13 How. 218
 14 L.Ed. 119
 HENRY MILLER, PLAINTIFF IN ERROR,
v.
DAVID AUSTEN, WILLIAM S. WILMERDING, AND DAVID
AUSTEN, JR., DEFENDANTS.
 December Term, 1851
 
 1
 THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Ohio.
 
 
 2
 On the 8th of February, 1840, the Mississippi Union Bank issued the following certificate:
 
 
 3
 MISSISSIPPI UNION BANK, }
 
 
 4
 Jackson, Miss. Feb. 8th, 1840. }
 
 
 5
 I hereby certify, that Hugh Short has deposited in this bank, payable 12 months from 1st May, 1839, with 5 per cent. interest till due, fifteen hundred dollars, for the use of Henry Miller, and payable only to his order, upon the return of this certificate.
 
 
 6
 $1500.
 
 
 7
 WM. P. GARYSON, Cashier.
 
 On which are the following indorsements:
 
 8
 Pay to George Lockwood or order.
 
 
 9
 HENRY MILLER,
 
 
 10
 Cincinnati, Ohio.
 
 
 11
 Pay Austen, Wilmerding & Co. or order, without recourse.
 
 
 12
 GEORGE LOCKWOOD.
 
 
 13
 On the 4th of May, 1840, L. V. Dixon, justice of the peace and ex offico notary-public, presented the paper declared on at the counter of the Mississippi Union Bank, at Jackson, and demanded of the teller payment in specie, or its equivalent, which that officer, after consultation with the other officers of the bank, refused; but offered to pay in the notes of the bank, which the notary would not accept. The defendant, Miller, was duly notified as indorser, by a written and printed notice, directed to him at Cincinnati, and deposited in the post-office in time for the first mail of the next day.
 
 
 14
 In July, 1847, Austen, Wilmerding & Co., brought an action against Miller in the Circuit Court of Ohio. The suit was brought against Miller as indorser, and the declaration contained three counts.
 
 
 15
 1st. Alleging it to be a promissory note of the Union Bank, payable to the order of Henry Miller, and by him indorsed to George Lockwood, who indorsed it to plaintiffs below.
 
 
 16
 2d. Alleging it to be a draft drawn by Henry Miller, on the Mississippi Union Bank, at Jackson, requesting the said bank to pay to George Lockwood, and by him indorsed to the plaintiffs below, and charging a due presentment for payment, and notice of non-payment.
 
 
 17
 3d. On a common count for money lent and advanced, paid, laid out, and expended, money had and received, and on an account stated.
 
 
 18
 The plea was non assumpsit.
 
 
 19
 In October, 1850, the cause came on for trial, when the jury found a verdict for the plaintiff for $2,468.86.
 
 
 20
 Upon the trial, the plaintiff offered the note in evidence, together with the protest, &c. Objection was taken, but the court overruled it and admitted the evidence. This was the subject of the first bill of exception.
 
 
 21
 The second exception was to the refusal of the court to grant certain prayers adked for by the defendant, of which it is only necessary to notice the following.
 
 
 22
 1st. That the paper offered in evidence is not negotiable instrument under the laws of Ohio, and cannot be sued on by the plaintiffs in the cause.
 
 
 23
 6th. That said paper offered in evidence is not a promissory note, nor is it a bill of exchange, but is a mere certificate, acknowledging the receipt and deposit of paper or obligations of some kind, which are payable twelve months after 1st May 1839, bearing interest at the rate of five per cent. till due.
 
 
 24
 Upon these exceptions the case came up to this court, and was argued by Mr. Fox, for the plaintiff in error, and by Mr. Chase and Mr. Rockwell, for the defendants in error.
 
 
 25
 Only those parts of the arguments will be noted, which bear upon the point decided by the court.
 
 
 26
 Mr. Fox. We maintain this is not a promissory note, as described in the declaration, so as to pass by indorsement, as a mercantile instrument. That it is not so considered in a mercantile sense, nor is it a promissory note under the statute of Ohio.
 
 
 27
 Under the statute of Ohio, (Swan's Stat. 587,) 'all bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or bearer, or to any person or assigns, shall be negotiable by indorsement thereon; . . . but nothing in this section shall be construed to make negotiable any such bond, note, or bill of exchange, drawn to any person or persons alone, and not drawn payable to order, bearer, or assigns.' A check and certificate of deposit are not mentioned in this statute as being negotiable.
 
 
 28
 Under this statute, the Supreme Court of Ohio has decided that this identical paper is not a promissory note, negotiable under the laws of Ohio, as will be seen by reference to the Western Law Journal, vol. 4, p. 527.
 
 
 29
 Suit was brought by these plaintiffs against Miller, on the same certificate, and was decided by Judge Hitchcock, May term, 1847. The case is reported very shortly, but the point decided is fully shown. We claim that this, being a decision upon a local statute, the statute must, by this court, be construed in the same way as the same is construed by the Supreme Court of Ohio. Whether it is such a note as is negotiable in Ohio, depends upon the statutes of Ohio; and the courts of that State having given a judicial construction to the statute, this court will adhere to the construction, because the very essence of the contract of indorsement depends upon the laws of Ohio, where it was made. 6 Cranch, 225; 10 Wheat. 50; 13 Pet. 379; 11 Wheat. 367; 6 Pet. 297.
 
 
 30
 We suppose, therefore, that we may safely rely upon the decision of the Supreme Court of Ohio, on this identical paper, between the same parties, as decisive of this question.
 
 
 31
 But independently of that decision, we maintain this is not such a promissory note as is or can be negotiable under the well-settled rules of law.
 
 
 32
 In the first place, there can be no such thing as a negotiable promissory note, unless there is an express promise to pay a certain amount. An implied promise will not answer. Story on Promissory Notes, sect. 14.
 
 
 33
 Where there is 'no more than a simple acknowledgment of the debt, with such a promise to pay as the law will imply,' it is not a promissory note. Patterson v. Poindexter, 6 Watts & Serg. 231. In that case this question is very fully examined by the Supreme Court of Pennsylvania, on a certificate of deposit, exactly like the one now before the court, and which was held not to be a promissory note, after two arguments. The court referred to Horne v. Redfearn, 6 Scott, 267, as conclusive on the subject.
 
 
 34
 In Fisher v. Leslie, 1 Esp. Rep. 426, it was held that a slip of paper 'I O U eight guineas,' is not a promissory note; the court held the paper was the mere acknowledgment of the debt, but was neither a promissory note nor a receipt.
 
 
 35
 An instrument acknowledging the receipt of 200 in drafts, for the payment of money, and promising to pay the money specified in the drafts, is not a promissory note. Williamson v. Bennett, 2 Camp. R. 417.
 
 
 36
 In the next place, it is not a promissory note, because it is payable upon a contingency and not at all events. It is payable only upon the order of Henry Miller, and upon the return of the certificate.
 
 
 37
 A promissory note must not depend upon any contingency whatever. Story on Prom. Notes, 22; Williamson et al. v. Bennett et al., 2 Camp. Rep. 417; Roberts v. Peake, 1 Burrow, 323.
 
 
 38
 This point was also decided in the case already alluded to, of Patterson v. Poindexter, 6 Watts & Sergeant, 232, where the court say the promise is a contingent one, depending upon the return of the certificate.
 
 
 39
 We call the attention of the court particularly to this case, because it was precisely like the present. The certificate was issued by the same bank, and the language is precisely the same, as are also the indorsements. It is the only well-considered case in the books, on this subject, and it decides that the paper is neither a promissory note, nor a bill of exchange, nor a check upon a bank, but is only what it purports to be, a mere certificate of deposit, which is neither a bill, note, or check.
 
 
 40
 Again, if this is a promissory note and negotiable, can the consideration be inquired into? If it can, in the hands of an assignee it ceases to be a negotiable promissory note. And we claim that the consideration of this note may be inquired into; that it may be shown for instance, that the statement that Hugh Short had deposited the amount named, is not in fact true. That portion of the note is like the statement of a bill of lading, acknowledging the receipt of goods, and may, like all statements of receipt, be explained or contradicted.
 
 
 41
 And we maintain that in a suit against the Mississippi Union Bank, the bank might show that instead of money being deposited, worthless bank-notes were deposited, and an offer to return the same notes would discharge the obligation.
 
 
 42
 Again, to whom (if this is a promissory note) is it payable? It acknowledges the receipt from Hugh Short, payable in twelve months with interest, of $1,500, for the use of Henry Miller, and payable only to his order. The amount received is from Short. It is payable, by the first part of the note, in twelve months, to Short, and not to Miller. The subsequent words 'for the use of Henry Miller,' do not alter the legal effect of the note. It is still a receipt of money from Short. It is payable to him in legal contemplation, notwithstanding the words 'for the use of Henry Miller.' These words do not vary the legal obligation. Supposing it had been a note promising to pay $1,500 to Hugh Short or order, for the use of Henry Miller, could it be pretended that any one, besides Short or his indorsee, could have recovered on the note at law? Under such circumstances, Miller would have had an equitable interest, but not the legal interest, and he or his assignee could not have recovered in a suit at law.
 
 
 43
 In order to sustain this suit as on a promissory note, the promise has to be implied, for there is no express promise to pay. Supposing that an implied promise to pay is sufficient, (which we think it is not,) to whom is this implied promise to be raised on this particular instrument?
 
 
 44
 As before remarked, if the promise had been express, to pay to Short, for the use of Miller, the legal title would have been in Short. Now, if in the absence of an express promise, we substitute an implied promise, must it not have the same effect? The plaintiffs below claimed the word payable was equivalent to an express promise to pay. Supposing it is so, for the sake of argument, how does the case stand? The certificate certifies that Hugh Short has deposited in the bank, payable in twelve months from 1st May, 1839, with 5 per cent. interest till due, $1,500. From this statement the promise to be implied, from the word payable, would be to Hugh Short. The subsequent statement, 'for the use of Henry Miller,' would no more in this case than in the case of an express promise, change the nature of the legal obligation. The words 'for the use of Henry Miller' would in each case be of no further efficacy than to point out the equitable owner of the paper.
 
 
 45
 But it is claimed that the additional words used, 'and payable only to his order, upon the return of this certificate,' change the whole legal character of the instrument, and make what before was payable to Hugh Short, now payable to Henry Miller, or order. We contend that such is not the fair construction of the instrument, but that it must be construed in the same way as though an express promise had been made to pay to Hugh Short, and if that express promise had been inserted, the paper would read thus:'I certify that Hugh Short has deposited in this bank $1,500, which is promised to be paid 12 months from 1st May, 1839, with 5 per cent. interest till due, to the order of said Short, (for the use of Henry Miller,) upon the return of this certificate.'
 
 
 46
 In other words, we contend that the words 'for the use of Henry Miller,' only indicate the equitable rights of the parties, and do not in any way affect the legal character of the paper. And to test this matter more fully, let us suppose that Hugh Short was owing Henry Miller $1,500, and that supposing that Henry Miller would be willing to accept his pay in this certificate of deposit, he obtains it in the form of the paper now in suit. Suppose further, that on his offering it to Mr. Miller, the latter refused to accept it, in whose name could the amount have been recovered in a court of law, of the bank? Miller could not have recovered, because he had refused to become the holder or owner of the paper. Is it not clear, then, that in such a state of case, Short could have received the amount? But if the construction is as contended for by counsel, Short could not have recovered, because the implied promise was not to him. We, however, contend that the promise, if expressed, would have been to Short, and if implied, it is also to him, and the other words, 'for the use of Henry Miller,' is only to designate the equitable course, which the legal owner or depositor, intends the money shall take, and that the words payable to his order, relate back to the original depositor, Short, and not Miller, just in the same way and manner as if there had been an express promise to pay. Short would then be the promisee, and would be a trustee for Miller, if the latter saw proper to receive the certificate.
 
 
 47
 So that we think it clear that this was not a promissory note; that it was not a promissory note to Henry Miller, but was an obligation of an equitable character, and he might have used the name of Hugh Short, in order to recover at law. That his indorsement of the certificate was no more than a mere authority to receive the money, and did not subject him to the payment of the sum mentioned in the certificate in case of default by the bank. Story on Prom. Notes, §§ 128, 129.
 
 
 48
 Mr. Chase and Mr. Rockwell.
 
 
 49
 The first exception only remains for consideration, namely, that the paper declared on, is not a negotiable promissory note under the laws of Ohio.
 
 
 50
 There is noting peculiar in the legislation of Ohio in relation to promissory notes. The statute 'making certain instruments of writing negotiable,' provides that 'all promissory notes drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or bearer, or to any person or assigns, shall be negotiable by indorsement thereon,' &c. Swan's Stat. This legislation does not at all affect the general principles so firmly established by repeated decisions in respect to negotiable paper.
 
 
 51
 'A bill or note is not confined to any set form of words. A promise to deliver or to be accountable, or to be responsible for so much money, is a good bill or note.' 3 Kent's Com. 75; Chitty on Bills, 40, and notes.
 
 
 52
 'No particular words are necessary; the form may be varied at the pleasure of the individual, so, always, that it amounts to a written promise for the payment of money absolutely and at all events, and interferes with no statute regulation. Thus, an order or promise to deliver a certain sum of money to A, or to be accountable or responsible to A, for a certain sum of money, or that A shall receive it from the maker, is a good promissory note; so a receipt for money to be returned when called for, or an acknowledgment, due to A a certain sum of money payable on demand; or a promise to pay or cause to be paid to A a certain sum of money; or an instrument acknowledging the receipt of money of A, promising to pay it on demand with interest; or acknowledging the receipt of money to be repaid in one month; or acknowledging to have borrowed a certain sum of money, in promise of payment thereof.' Story on Prom. Notes, 15, § 12.
 
 
 53
 A promise implied by law, founded upon a mere acknowledged indebtment, will not be sufficient. Thus, where A wrote upon a slip of paper 'I O U eight guineas,' it was held to be a mere due-bill, and not a promissory note. But if the promise were 'Due to A B 20, payable to him or order,' it would be a promissory note, for it contains more than the law would imply, and becomes negotiable. Story on Prom. Notes, 17, § 14; Curtis v. Rickards, 1 Mann. & Grang. 46; Russell v. Whipple, 2 Cowen, 536.
 
 
 54
 The decision in Ohio are in strict accordance with these principles.
 
 
 55
 In Moore v. Gano, 12 Ohio R. 302, the following instrument was held a promissory note:——
 
 
 56
 Bridgeport, 12th month, 30th, 1836.
 
 
 57
 Received of John Moore, five thousand one hundred and ten dollars, which we promise to replace to the said Moore on demand, with interest from date.
 
 
 58
 GANO, THOMS, & TALBOTT.
 
 
 59
 In McCoy v. Gilmore, 7 Ohio R. Pt. 1, 268, it was held that 'no special form of words is necessary to constitute a promissory note. It is enough if the intent appear, and the sum can be made certain by calculation.'
 
 
 60
 In Ring v. Foster, 6 Ohio R. 279, a contract by which A agreed to pay to B one hundred and forty dollars, 'provided B delivers the crop of tobacco raised by him and C, then B is to have one fourth of the above sum in hand, and in addition three dollars per hundred weight for that part yet to be delivered, payable one fourth in hand, and the balance in one hundred and twenty days,' was held to be a promissory note.
 
 
 61
 These cases show the doctrine in Ohio on this subject; and that it is quite as liberal in favor of commerce as that of England, or her co-states.
 
 
 62
 The plaintiff in error relies upon a brief note of a decision said to have been made by the Supreme Court of Ohio in Hamilton county. The case is not reported, but merely the point supposed to have been decided; and this not by an authorized reporter, in any book of reports, but as an item of intelligence for a law journal. Those conversant with the stirrup practice of the Supreme Court on the Circuit in Ohio, would not claim the weight of authority for this paragraph in the Law Journal.
 
 
 63
 There is, however, it must be admitted, a decision, not of an Ohio court, but of a Pennsylvania court, both respectable and respected, which sustains the doctrine insisted on by the plaintiff in error. In the case of Patterson v. Poindexter, 6 Watts & Serg. 227, it was held that a certain certificate of deposit, in all respects like that now in controversy, was not a negotiable note. The opinion of the court maintains three propositions:
 
 
 64
 1st. That the words 'payable to order' do not import a promise to pay; which is in direct opposition to the whole current of English and American authority.
 
 
 65
 2d. That a promise to pay on 'return of the certificate,' is a contingent and conditional promise, and therefore the note by which such promise is made is not a promissory note; and this, although the court is immediately after, forced to admit that 'true it is that such a contingency is no more than is implied in every promissory note.'
 
 
 66
 3d. That the words 'payable twelve months from 18th May, 1839, with five per cent. interest till due,' constitutes a special agreement for interest, which is inconsistent with the character of a promissory note; and this, also, is in direct opposition to the current of authority.
 
 
 67
 Upon these three propositions the court rested their conclusion that the paper in question was not a negotiable promissory note.
 
 
 68
 The only authority cited in support of this conclusion was Horne v. Redfearn, 6 Scott's Cases, 267.
 
 
 69
 This was a decision under the Stamp Act. Suit was brought on the following letter:
 
 
 70
 December 25, 1829.
 
 
 71
 SIR: I have received the sum of 20, which I borrowed you, and have to be accountable for the same with legal interest.
 
 
 72
 I am, &c.,
 
 
 73
 PETER REDFEARN.
 
 
 74
 It was stamped as a special agreement, and was sued on as such. It was objected that it was a promissory note, and not being stamped as such, could not be given in evidence. But Chief Justice Tindal said: 'I think this case may be decided by referring to the provisions of the Stamp Act, without referring to the cases which have been cited.' He then proceeded to hold that the instrument, being stamped as a special agreement, and not as a promissory note, fell within the exemption of the act, 55 Geo. 3, c. 184, from the promissory note stamp 'of all other instruments bearing in any degree the form or style of promissory notes, but which shall in law be deemed special agreements, except those hereby expressly directed to be deemed promissory notes.' The Chief Justice added, 'It would be a very harsh construction of the act to hold the document to be a promissory note, after the commissioners on stamps have impressed it with an agreement stamp, upon payment of the usual penalty.'
 
 
 75
 This brief statement clearly shows that the case of Horne v. Redfearn went entirely upon a construction of the Stamp Act; and it is remarkable enough that, by this very act, simple certificates of deposit, issued by banks, without any words such as 'payable,' and the like, importing a promise to pay, are declared to be promissory notes. So that there cannot be a doubt that in England the paper now in controversy would be held to be a promissory note, whether the question was decided upon general principles or statutory provisions.
 
 
 76
 The Pennsylvania decision, then, is without the support of any English case, as it is without the support of any general principle of law applicable to promissory notes.
 
 
 77
 We shall proceed to show that it is in direct conflict with American authorities.
 
 
 78
 In the case of Kilgore v. Bulkley, 14 Conn. Rep. 363, the Supreme Court of Connecticut held the following certificate of deposit to be a promissory note:
 
 
 79
 $10,608.75.
 
 
 80
 Chelsea Bank, July 6, 1839.
 
 
 81
 I do hereby certify that David E. Wheeler, Robert S. Taylor, and Noah Bulkley, have deposited in this bank the sum of ten thousand six hundred and eight dollars seventy-five cents, payable on the first day of December next, to their order, on the return of this certificate.
 
 
 82
 D. E. WHEELER, President.
 
 
 83
 And the following writing, indorsed upon the paper, was held to be an indorsement by which the parties made themselves liable as indorsers of a negotiable note:
 
 
 84
 'For value received, we hereby assign to S. F. Maccracken, Joseph S. Lake, and Daniel Kilgore, Commissioners of the Ohio Canal Fund, or their successors, the amount of the within certificate.'
 
 
 85
 The case of the Bank of Orleans v. Merril, 2 Hill, N. Y. Rep. 295, is also in direct conflict with the case of Patterson v. Poindexter. In that case, the action being brought on a certificate of deposit, the court said, 'the instrument in question is in effect a negotiable promissory note.
 
 
 86
 Thus, then, stands the case. The paper in controversy has all the requisites which an unbroken current of decisions has pronounced essential to a promissory note. It is a promise to pay a sum of money certain, at a fixed time, for value received. It was regarded by the maker, by the defendant, and by the plaintiffs, as a negotiable promissory note. By the maker, for it was in the language of the Ohio statute, 'drawn payable to order;' by the defendant, for he issued it payable to the order of his indorsee, and he added to his signature the place of his residence, obviously that, in the event of non-payment, it might be known where to direct notice; by the plaintiffs, for they caused it to be presented for payment, and protested as negotiable paper. Two American courts, of distinguished ability, have expressly held similar instruments to be negotiable paper. One American court has held otherwise.
 
 
 87
 This statement would seem to be decisive. We do not think it worth while to comment on the positions of the counsel for the plaintiffs in error, that the paper in question is not a promissory note, because subject to the condition of the return of the certificate; and that, if it is a note at all, it is a note to Hugh Short, and not to Henry Miller. The first is refuted by the remark of the court which suggested it, that it is a condition which is implied by law in every promissory note; and the second is refuted by the language of the instrument, and the act of the defendant himself.
 
 
 88
 We will only add two or three cases, which illustrate somewhat strikingly the disposition to which the Supreme Court of New York referred, when they said, 'the great commercial advantages growing out of negotiable instruments, have induced the courts to adopt a most liberal rule in construing them.' The first case is that of Walker v. Roberts, 1 Carr. & Marsh. 590, (41 Eng. Com. Law Rep. 321.) The following document was held to be a promissory note:'February, 1831. William Walker lent to James Roberts 19, 19s. 11d.; to pay five per cent. for the same 19, 19s. 11d.; to pay on demand to the said William Walker, giving James Roberts six months' notice of the same. James Roberts, Mary Roberts.'
 
 
 89
 The other case is that of Henschel v. Mahler, 3 Hill's N. Y. Rep. 132. The action was upon the following instrument:
 
 
 90
 'For francs 8,755.60, payable on the 31st of December, 1839. On the 31st of October, of this year, pay to the order of ourselves, 8,755 francs 60 centimes, payable in Paris, the 31st of December, of this year.'
 
 
 91
 It was held a valuable negotiable bill of exchange, notwithstanding the ambiguity; the words, 'on the 31st of October, in this year,' being rejected as repugnant, and the bill held payable 'on the 31st of December.'
 
 
 92
 We refer the court, also, to 1 Greenl. Rep. 535; 2 Cow. Rep. 536; 10 Wend. 675; and, in deciding the last of which cases, Nelson, J., said, 'the instrument is a promissory note within the statute, as it contains every quality essential to such paper. The acknowledgment of indebtedness on its face implies a promise to pay the plaintiffs,' and the payment, by its terms, was to be in money, absolutely. The instrument on which this last action was brought was as follows: 'Due Kimball & Kiniston three hundred and twenty-five dollars, payable on demand.'
 
 
 93
 Mr. Justice CATRON delivered the opinion of the court.
 
 
 94
 The only question this case presents that we deem worthy of notice is, whether the paper sued on is a negotiable instrument; it is as follows:
 
 
 95
 'No. 959. Mississippi Union Bank, Jackson, (Miss.) Feb. 8, 1840. I hereby certify, that Hugh Short has deposited in this bank, payable twelve months from 1st May, 1839, with 5 per cent. interest till due, fifteen hundred dollars, for the use of Henry Miller, and payable only to his order upon the return of this certificate. $1,500. Wm. P. Grayson, Cashier.'
 
 
 96
 The suit was by the last indorsee against his immediate indorser, and brought in Ohio. The statute of that State declares all promissory notes, drawn for a sum certain, payable to any person or order, or to any person or his assigns, negotiable by indorsement.
 
 
 97
 The established doctrine is, that a promise to deliver, or to be accountable for, so much money, is a good bill or note. Here the sum is certain, and the promise direct. Every reason exists why the indorser of this paper should be held responsible to his indorsee, that can prevail in cases where the paper indorsed is in the ordinary form of a promissory note; and as such note, the State courts generally, have treated certificates of deposit payable to order; and the principles adopted by the State courts in coming to this conclusion, are fully sustained by the writers of treatises on bills and notes. Being of opinion that the Circuit Court properly held the paper indorsed, negotiable, it is ordered that the judgment be affirmed.
 
 Order.
 
 98
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Ohio, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs and damages, at the rate of six per centum per annum.