## BULL *v.* BANK OF KASSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Submitted May 3, 1887. — Decided October 31, 1887.

A bank check for the payment of "five hundred dollars in current funds" is payable in whatever is current by law as money, and is a bill of exchange, within the meaning of the act of March 3, 1875, c. 137, defining the jurisdiction of the courts of the United States.

A bank check, presented by a bona fide indorsee for payment six months after its date, the funds against which it was drawn remaining in the hands of the drawee, and the drawer having been in no way injured or prejudiced by the delay in presentment, is not overdue so as to be subject to equities of the drawer against a previous holder.

THIS case came before this court on a certificate of division of opinion between the circuit and district judges holding the Circuit Court of the United States for the District of Minnesota. The action was upon two drafts, or bills of exchange, (as they are termed in the record,) each for $500, drawn by the First National Bank of Kasson in Minnesota upon the Ninth National Bank in New York City, and payable to the order of A. La Due, of which the following were copies:

"The First National Bank,
" $500.                                        Kasson, Minn., Oct. 15, 1881.
" Pay to the order of Mr. A. La Due five hundred dollars in current funds.
" No. 18956.                        E. E. FAIRCHILD, Cashier.
" To Ninth National Bank, New York City.
"Indorsed: Pay to the order of M. Edison, Esq.   A. La Due. M. Edison."

" First National Bank,
" $500.                                        Kasson, Minn., Oct. 15, 1881.
" Pay to the order of Mr. A. La Due five hundred dollars in current funds.
" No. 18754.                        E. E. FAIRCHILD, Cashier.
" To Ninth National Bank, New York City.
"Indorsed: Pay to the order of M. Edison, Esq.   A. La Due. M. Edison."

The drafts or bills of exchange were immediately after their execution transferred by indorsement of the payee to one M. Edison, at Kasson, Minnesota. Edison was at the time largely indebted, and on the following day he absconded from Kasson, carrying the drafts with him. These drafts he retained in his possession until March 24, 1882, when, at Quincy, in Illinois, he sold and indorsed them for a valuable consideration to the plaintiffs, who had no notice of any set-off to them. The plaintiffs then forwarded them to New York City, where, on the 27th of March, they were presented for payment to the drawee, the Ninth National Bank of New York; and payment was refused by it. The drafts were then protested for non-payment, and notice thereof given to the drawer and indorsers.

In the meantime the First National Bank of Kasson, the drawer of the drafts, had become the owner of certain demands against Edison, which, under the statute of Minnesota, could be legally set-off against its liability on the drafts in the hands of Edison, and also in the hands of the plaintiffs, unless they were protected against such set-off as innocent purchasers of the paper before maturity, and without notice of the set-off. At the time the drafts were drawn, and at the time of their presentation for payment, the Ninth National Bank of New York had in its hands money of the drawer sufficient to pay them.

The action was tried by the court without the intervention of a jury by stipulation of parties, and the facts stated above are embodied in its findings. Upon these facts the following question of law arose, viz.: Whether the said drafts, or bills of exchange, were to be regarded as overdue and dishonored paper at the time they were presented by the plaintiffs to the drawee for payment and payment refused, so as to admit the set-off.

Upon this question the judges were divided in opinion, and, upon motion of plaintiffs, it was certified to this court for decision. The circuit judge who presided at the circuit, being of opinion that the question should be answered in the affirmative, ordered judgment for the defendant. To review this

judgment, upon the certificate of division of opinion, the case was brought here on writ of error.

Mr. *William McFadon* for plaintiffs in error.

Mr. *Charles C. Willson* for defendant in error.

I. To give the Circuit Court jurisdiction, in a case like this, under the act of 1875, the instrument sued on must be either a promissory note or a bill of exchange. These two instruments would have been perfect inland bills of exchange if the words " in current funds" had been omitted. Those words must have been used with a purpose of limiting or changing the intent of the instrument. " Funds" is a more comprehensive word than " money." It includes securities and resources from which ready money may be realized. " Current funds" are those securities which are current and used as money in the place of payment. But they are not money, so as to give negotiability to the instrument which is payable in them. A bill of exchange payable in Bank of England notes was held to be not negotiable. *Ex parte Imeson*, 2 Rose Cas. Bankr. 225. So of a bill payable in " Office notes of the Lumberman's Bank at Warren." *Irvine* v. *Lowry*, 14 Pet. 293. So of a promissory note payable in current bank notes receivable at the counter of the Bank of Michigan. *Fry* v. *Rousseau*, 3 McLean, 106. So of a note "payable in New York funds or their equivalent." *Hasbrook* v. *Palmer*, 2 McLean, 10. So of a note promising to pay " six hundred and eighty dollars (Foreign Bills)." *Jones* v. *Fales*, 4 Mass. 245. See also *Texas Land & Cattle Co.* v. *Carroll*, 63 Texas, 48 ; *Haddock* v. *Woods*, 46 Iowa, 433 ; *Conwell* v. *Pumphrey*, 9 Ind. 135 ; *Lindsey* v. *McClelland*, 18 Wis. 481 ; *McCormick* v. *Trotter*, 10 S. & R. 94 ; *Little* v. *Phœnix Bank*, 2 Hill, 425 ; *Platt* v. *Sauk County Bank*, 17 Wis. 222, 226 ; Note in 1 Am. Leading Cases, 314.

II. Whatever may be the general rule of law elsewhere in regard to a set-off against overdue and negotiable paper, in Minnesota, where this case arose and where it was tried, it is provided by statute that in an action arising on contract the

defendant may set off any other cause of action arising also on contract, and existing at the commencement of the action. Minn. Genl. Stats., 1878, c. 66, § 97, second; c. 65, § 40. See *Linn* v. *Rugg*, 19 Minn. 181; *Martin* v. *Pillsbury*, 23 Minn. 175; *Bond* v. *Fitzpatrick*, 4 Gray, 89. The Federal Circuit Courts follow the rule in the State where the action was brought. *Partridge* v. *Insurance Co.*, 15 Wall. 573. The Circuit Court of the United States in Minnesota held that the bank had the right to make the set-off when sued upon these drafts. *Bull* v. *Bank of Kasson*, 14 Fed. Rep. 612. The Supreme Court of Minnesota also held, in a suit upon another of this series of drafts, that the set-off must be allowed. *La Due* v. *Kasson Bank*, 31 Minn. 33.

III. By the law which prevails in Minnesota these drafts were past due when Edison transferred them to plaintiff. A demand draft becomes due after the lapse of a reasonable time in which to present it for payment in the due course of business. A statute of Minnesota provides that a reasonable time shall not extend beyond sixty days from the date when it is put in circulation. Minn. Gen. Stats., 1878, c. 23, § 11. This statute was substantially copied from the Massachusetts statute mentioned in *Rice* v. *Wesson*, 11 Met. 400. For cases in which delay has been held fatal without a statutory rule, see *Walsh* v. *Dart*, 23 Wis. 334; *Phœnix Ins. Co.* v. *Gray*, 13 Mich. 191; *Sice* v. *Cunningham*, 1 Cowen, 397; *Hart* v. *Eastman*, 7 Minn. 74; *Newark Bank* v. *Bank of Erie*, 63 Penn. St. 404. For the construction put by the Supreme Court of Minnesota on this statute, see *La Due* v. *Kasson Bank*, 31 Minn. 33.

A bill of exchange is the instrument by which the payee transmits his funds to a distant creditor. Its sole purpose is such transmission, and the parties to it, when it is drawn, contemplate a speedy mailing of it to the indorsee, and that such indorsee will collect the bill of the drawee by due course of mail and business. The parties all contemplate that no one will hold the bill more than one day.

This being the expectation of the drawee when he sells the bill, he only undertakes to have an agent or correspondent at

the place of payment with funds for a reasonable length of time thereafter. He does not agree to maintain an agent and hold funds at the distant place of payment forever. There must come a time when the drawer's obligation to employ an agent and intrust him with funds at the place of payment, will end. It must end if the bill be not presented for payment within the time reasonably contemplated by the drawer and payee at the time it was made, having regard to the object of such bills and the usual course of business. It was not contemplated by the drawer and payee that these bills should be held as certificates of deposit with the drawee. They were past due when a reasonable time for presentation had elapsed. As they remained unaccepted, the drawer was the debtor, and had the right of set-off under the Minnesota Statutes.

IV. It is submitted that the certificate of division of opinion states a mixed question of law and fact, which, as a jury was waived, was proper for the decision of the Circuit Judge, but is not reviewable here on a certificate of division of opinion. *Williamsport* v. *Knapp*, 119 U. S. 357, 360.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

In the record, the instruments upon which the action is brought are designated as "drafts or bills of exchange." In a general sense they may be thus designated; for they are orders of one party upon another for the payment of money, which is the essential characteristic of drafts or bills of exchange. They are also negotiable, and pass by delivery, and are within the description of instruments of that character in the act of March 3, 1875, prescribing the jurisdiction of Circuit Courts of the United States. But, in strictness, they are bank checks. They have all the particulars in which such instruments differ or may differ from regular bills of exchange. They are drawn upon a bank having funds of the drawer for their payment, and they are payable upon demand, although the time of payment is not designated in them. A bill of exchange may be so drawn, but it usually states the

time of payment, and days of grace are allowed upon it. There are no days of grace upon checks.

The instruments here are also drawn in the briefest form possible in orders for the payment of money, which is the usual characteristic of checks. A bill of exchange is generally drawn with more formality, and payment at sight, or at a specified number of days after date, is requested, and that the amount be charged to the drawer's account. When intended for transmission to another state or country, they are usually drawn in duplicate or triplicate, and designated as first, second or third of exchange. A regular bill of exchange, it is true, may be in a form similar to a bank check, so that it may sometimes be difficult, from their form, to distinguish between the two classes of instruments. But when the instrument is drawn upon a bank, or a person engaged in banking business, and simply directs the payment to a party named of a specified sum of money, which is at the time on deposit with the drawee, without designating a future day of payment, the instrument is to be treated as a check rather than as a bill of exchange, and the liability of parties thereto is to be determined accordingly. If the instrument designates a future day for its payment, it is, according to the weight of authorities, to be deemed a bill of exchange, when, without such designation, it would be treated as a check. *Bowen* v. *Newell*, 4 Selden, 190.

The instruments upon which the action is brought being bank checks, the liability of the parties is determinable by the rules governing such paper. A check implies a contract on the part of the drawer that he has funds in the hands of the drawee for its payment on presentation. If it is dishonored the drawer is entitled to notice, but, unlike the drawer of a bill of exchange, he is not discharged from liability for the want of such notice unless he has sustained damage, or is prejudiced in the assertion of his rights by the omission. In *Merchants' Bank* v. *State Bank*, 10 Wall. 604, this court said : " Bank checks are not inland bills of exchange, but have many of the properties of such commercial paper ; and many of the rules of the law merchant are alike applicable to both. Each

is for a specific sum payable in money.   In both cases there is a drawer, a drawee, and a payee.   Without acceptance, no action can be maintained by the holder upon either against the drawee.[1]   The chief points of difference are that a check is always drawn on a bank or banker.   No days of grace are allowed.   The drawer is not discharged by the laches of the holder in presentment for payment, unless he can show that he has sustained some injury by the default.   It is not due until payment is demanded, and the statute of limitations runs only from that time.   It is by its face the appropriation of so much money of the drawer in the hands of the drawee to the payment of an admitted liability of the drawer.   It is not necessary that the drawer of a bill should have funds in the hands of the drawee.   A check in such case would be a fraud." 10 Wall. 647.

Similar language is used by Mr. Justice Story with reference to the time when checks are to be regarded as due.   In stating the differences in point of law between checks and bills of exchange, he refers to the rule that a bill of exchange, taken after the day of payment, subjects the holder to all the equities attaching to it in the hands of the party from whom he receives it.   "But," he adds, "this rule does not apply to a check; for it is not treated as overdue, although it is taken by the holder some days after its date, and it is payable on demand.   On the contrary, the holder in such a case takes it, subject to no equities of which he has not, at the time, notice; for a check is not treated as overdue merely because it has not been presented as early as it might be, or as a bill of exchange is required to be, to charge the drawer, or indorser, or transferrer.   One reason for this seems to be, that, strictly speaking, a check is not due until it is demanded."   Story Promissory Notes, § 491.   See also *Matter of Brown*, 2 Story, 502, 513.

Accepting these citations as correctly stating the law, the question presented for our decision is readily answered.   The drawer was in no way injured or prejudiced in his rights by

---

[1] This word is " drawer " in the original, and Mr. Wallace followed the original in reporting the case; but it is evidently a clerical or typographical error.

the delay of Edison to present the checks.  The funds against which they were drawn remained undisturbed in the hands of the drawee, and, therefore, the drawer had no cause of complaint.  The instruments in suit were not overdue and dishonored when presented for payment.  Until then the plaintiffs, as purchasers for a valuable consideration without notice of any demand against Edison, in the hands of the drawer, were protected against its set-off.

The certificate of division of opinion presents to us only one question, and yet, to answer that correctly, we must consider whether the negotiability of the instruments in suit was affected by the fact that they were payable " in current funds." Undoubtedly it is the law that, to be negotiable, a bill, promissory note or check must be payable in money, or whatever is current as such by the law of the country where the instrument is drawn or payable.  There are numerous cases where a designation of the payment of such instruments in notes of particular banks or associations, or in paper not current as money, has been held to destroy their negotiability. *Irvine* v. *Lowry*, 14 Pet. 293 ; *Miller* v. *Austen*, 13 How. 218, 228.  But within a few years, commencing with the first issue in this country of notes declared to have the quality of legal tender, it has been a common practice of drawers of bills of exchange or checks, or makers of promissory notes, to indicate whether the same are to be paid in gold or silver, or in such notes ; and the term " current funds " has been used to designate any of these, all being current and declared, by positive enactment, to be legal tender.  It was intended to cover whatever was receivable and current by law as money, whether in the form of notes or coin.  Thus construed, we do not think the negotiability of the paper in question was impaired by the insertion of these words.

It follows from these views that the question certified to us must be answered in the negative.  The judgment will, therefore, be

*Reversed, and the cause remanded, with directions to enter judgment for the plaintiffs upon the findings ; and it is so ordered.*