SECURITY TRUST CO. OF ROCHESTER, N. Y., v. DES MOINES COUNTY, IOWA.

(Circuit Court, S. D. Iowa, E. D.   March 1, 1909.)

No. 416, Law.

COUNTIES (§ 167*)—CERTIFICATE OF INDEBTEDNESS—"NEGOTIABILITY."

　　Under the Negotiable Instrument Act of Iowa (Acts 1902, c. 130, § 2; Code Supp. Iowa 1907, § 3060a2), which provides that the sum payable by an instrument shall be a sum certain within the meaning of the act, "although it is to be paid * * * with exchange, whether at a fixed rate or at the current rate," an obligation of a county, negotiable

in form and issued under a statute permitting it to be made negotiable, is not nonnegotiable because it is made payable "in New York or Chicago exchange."

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 249; Dec. Dig. § 167.*]

At Law. Action by the Security Trust Company of Rochester, N. Y., against the County of Des Moines, Iowa. On demurrer to answer and on trial to the court. Judgment for plaintiff.

John J. Seerley and Frank Keiper, for plaintiff.
W. E. Blake and H. F. Kuhlemeier, for defendant.

SMITH McPHERSON, District Judge. This is an action at law by the plaintiff, a corporation of the state of New York, against the county of Des Moines, one of the counties of the state of Iowa, asking judgment for $17,550, with interest thereon, on an evidence of indebtedness of which the following is a copy:

Certificate of Indebtedness of the County of Des Moines, State of Iowa.

$17,550.00. This is to certify, that the county of Des Moines, state of Iowa, is justly indebted to, and for value received, promises to pay to, the U. S. Standard Voting Machine Company, of Rochester, New York, or bearer, on the fifteenth day of April in the year one thousand nine hundred and eight, at the office of the county treasurer of said county, the sum of seventeen thousand five hundred and fifty dollars ($17,550.00) lawful money of the United States of America, without interest, payable in New York or Chicago exchange.

In witness whereof, the said county of Des Moines, Iowa, has caused its corporate seal to be hereunto affixed and these presents to be signed by its chairman of county board of supervisors and its county auditor this 29th day of December, 1906.

[Seal of the County.]                County of Des Moines, State of Iowa,
                                                By E. L. Naumann,
Chairman of Board of Supervisors in and for Des Moines County, Iowa.
                                                By M. P. Sharts,
                County Auditor in and for Des Moines County, Iowa.

It is further alleged that in June, 1907, said certificate for good and sufficient consideration and in the due course of business became the property of plaintiff, and at all times since has been held by the plaintiff as its property; and it is alleged that demand was made for the payment, which was refused.

The answer is in many divisions. The first division is not assailed. It consists of a denial that the plaintiff is a bona fide holder of the certificate sued on, acquired for a valuable consideration, without notice, before due. The second division alleges that the defendant by its board of supervisors by resolution was authorized to purchase from the Rochester Company 27 voting machines at the net price of $650 each. The contract, which is in writing, is set out at length. It is alleged in the answer that the board of supervisors was without authority to execute said instrument sued on, for the reason that it was provided in the contract that the obligation was to bear interest at the rate of 5 per cent. from and after April 15, 1908, and not to run over 15 years, payable annually, whereas the instrument sued on bears 6

per cent. interest from April 15, 1908, and is not the instrument authorized, and for the further reason that the instrument sued on is not an unconditional promise to pay a sum certain in money. It is further alleged that for at least two of said years, namely, 1908 and 1912, presidential elections will occur, and that the machines are so constructed as to prevent and will not permit the voter to vote for such presidential electors as he may desire, because the law requires that it must be so constructed—

"as to prevent voting for more than one person for the same office, except where the voter is lawfully entitled to vote for more than one person for that office; and it must afford to him an opportunity to vote for any and all persons for that office as he is by law entitled to vote for, and no more, at the same time preventing his voting for the same person twice."

And the machine is so constructed in that it compels the voter, if he votes at all, to vote for all electors designated by any political party, and will not permit him to vote for some of the candidates for electors on one ticket and some on another. It is further alleged that the machine is so constructed as not to permit the conducting of said election for electors as for state officers and representatives in Congress. For instance, as the answer recites, at the general election in 1908, 10 men were candidates for Judge of the Supreme Court of the state, when but 3 were to be elected, and any of the said 10 men could be voted for by the voter, and the voting machines would so permit. But by the machine a voter cannot vote for presidential electors unless he votes for all the candidates of a certain party. And the answer recites there were 78 presidential elector candidates, with but 13 to be elected.

The answer further recites that the Rochester Company perpetrated a fraud upon the defendant, in that it represented to the defendant's board of supervisors, as an inducement to make the contract, that the particular voting machine, which would register the will of the voter, had been approved by the Iowa state board, whereas, if such authority was given and such approval was made by the state board, it was a fraud upon the voters, because such approval of the state board would be unlawful and unconstitutional. The answer further recites that the voting machine law (chapters 3, 4, Code of Iowa Supplement) is contrary to the Constitution of the state of Iowa, to wit, article 1, § 6, which provides:

"All laws of a general nature shall have a uniform operation."

And to enable a voter to vote for different candidates for presidential electors, he could not use the machine, but would be required to call for a ticket and indicate thereon his preference. So the question is, if the obligation sued on is negotiable and issued by authority, there can be a recovery herein; but if the instrument is not negotiable, and the machine will not enable the voter to vote his will, then under the guaranty of the Rochester people the plaintiff, occupying this position, cannot recover.

Plaintiff has filed a demurrer, insisting that the instrument declared on is negotiable and that the alleged defenses cannot be made as

against plaintiff; so that the question, and the only question, now to be decided, is as to whether the instrument is negotiable or nonnegotiable. Plaintiff alleges that it became the holder for value, before maturity, without notice of any defense, of the obligation sued on. If it is a negotiable instrument, usually, but with an exception in case of fraud, the maker has the burden of proof on the question of whether the plaintiff is an innocent holder. But that question is not now before the court. It is practically conceded that the obligation is in form negotiable, unless the recital "payable in New York or Chicago exchange" makes it nonnegotiable.

The cases can be briefly cited. That the cases are in irreconcilable conflict is apparent. Many of the cases have been decided accordingly as to whether the particular courts believed in a rigid or liberal construction of the long time requirement that the obligation should be *certain* as to the amount the obligor should pay. The Iowa case of Culbertson v. Nelson, 93 Iowa, 187, 61 N. W. 854, 27 L. R. A. 222, 57 Am. St. Rep. 266, and the several cases therein cited, show that down to the year 1895 the words "with exchange" make the note nonnegotiable; and the annotations to that case as found in 27 L. R. A. 222, give many, and perhaps all, the cases, down to that date, from which will appear the authorities on the two sides of the question.

It is a familiar general rule that as to commercial paper the courts of the United States will exercise their own independent opinion, and will not be controlled by view of the Supreme Court of the state in which the United States Court is sitting. In the case of Hughitt v. Johnson (C. C.) 28 Fed. 865, Circuit Judge (now Justice) Brewer in an oral opinion declared that such a note was nonnegotiable. The case of Windsor Savings Bank v. McMahon (C. C.) 38 Fed. 283, 3 L. R. A. 192, by Judge Shiras, is with a like holding.

But there are authoritative holdings to the contrary. A recital on what account the note was given does not make it nonnegotiable. The words "in current funds" do not make it nonnegotiable (Bull v. Bank, 123 U. S. 105, 8 Sup. Ct. 62, 31 L. Ed. 97) although the Iowa Supreme Court holds otherwise (Haddock v. Woods, 46 Iowa, 433). A note payable in pounds sterling is negotiable, although an allegation and proof would be required as to the amount this would be in money. King v. Hamilton (C. C.) 12 Fed. 478, and cases cited. A certificate of deposit is negotiable. Miller v. Austen, 13 How. 218, 14 L. Ed. 119. And this is so although the certificate is (1) a receipt for money, or a certificate that the sum has been deposited; (2) it is for the use of a party named; (3) it is payable when the certificate is returned, properly indorsed. A note reciting for what property it was given, and that the title to the property does not pass until the note is paid, and that the failure to pay one note matures all others connected with the transaction, is a negotiable note. Railroad v. Merchants' Bank, 136 U. S. 285, 10 Sup. Ct. 999, 34 L. Ed. 349.

It was argued that the obligation in suit is not payable in money, because it is made payable in exchange, and not *with* exchange. This is very critical, and the distinction so refined, that it is difficult to see it. Whether "in" and "with" are synonyms, and whether there

are such things as synonyms, I leave to others who have time for such discussions. But great commercial questions like this ought not to turn on the particular shade of meaning of some preposition. The defendant agreed to pay so much money, and the payee was to receive it. The payee was in another state. It must either come after the money, or the money when paid at the county treasurer's office was to be carried in some form to Rochester, N. Y. It was a method of carriage to Rochester, which would be attended with cost, and it was agreed that the payor should pay the cost. I do not say the distinction between "in" and "with" cannot be seen, but it is difficult to see. The great per cent. of the business of the country is done in commercial paper, and a great per cent. of that paper is payable both "in" and "with" exchange.

It is undoubtedly true that questions pertaining to the law merchant are matters of general jurisprudence, concerning which United States courts are not governed by the rulings of the state courts. The obligation in suit was executed in the year 1906. At that date there was in force in Iowa the statute of 1902 (Laws 1902, c. 130) with reference to negotiable instruments. It is uniform with the statutes of 30 or more states, enacted within the past few years. New York then had, and now has, such statute. There the payee resided and did business. Among other things the statute provides:

"The sum payable is a sum certain within the meaning of this act, although it is to be paid: (1) * * * (2) * * * (3) * * * (4) With exchange, whether at a fixed rate, or at the current rate." Section 2.

That chapter under which the obligation was issued is chapter 37 of the Laws of 1900, section 8 of which provides that the county on the adoption and purchase of a voting machine may provide for the payment in such manner as may be deemed best for the locality, and for that purpose may issue bonds, certificates, or other obligations which shall be a charge on the county. These may be with or without interest, payable on time, and shall not be sold at less than par. Here is an express authority to issue bonds, and an implied authority at least to issue negotiable bonds. Claiborne County v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489, 28 L. Ed. 470; Dillon, Municipal Corporations (4th Ed.) § 125. The statute expressly authorizes the county to buy voting machines. It expressly authorizes the county to issue bonds therefor, with or without interest, payable at such time as may seem best. Impliedly it has the power to make such bonds negotiable in form, and in effect. This has been done, and all that is urged is that the machines are defective.

Orders in conformity to the foregoing will be made. But it is pleaded that the plaintiff is not a good-faith purchaser, before due, for value, without notice of defense. Of course, if that issue shall be determined in favor of the county, then the alleged defenses will be treated as though the original payee was plaintiff herein.

NOTE.—At the trial the findings were for plaintiff.