**ROCKY MOUNTAIN CLAIM STAKING, Plaintiff and Appellant,**

v.

**William FRANDSEN, Defendant and Appellee.**

No. 930349–CA.

Court of Appeals of Utah.

Nov. 7, 1994.

Thomas R. Karrenberg, Scott A. Call, Anderson & Karrenberg, Salt Lake City, for appellant.

Merlin O. Baker, Salt Lake City, for appellant.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Plaintiff Rocky Mountain Claim Staking (Rocky Mountain) appeals the trial court's order granting Defendant William Frandsen's Motion to Vacate and Set Aside Plaintiff's Foreign Judgment. We reverse.

### FACTS

In spring of 1991, Frandsen, a Utah resident, telephoned David Waldner, the president of Rocky Mountain, at Rocky Mountain's offices in Boulder, Colorado. The two parties discussed the staking of Frandsen's unpatented mining claims in Idaho. Rocky Mountain staked the claims in Idaho, then billed Frandsen in Utah for $8,500. Frandsen sent an undated check for $8,500 to Rocky Mountain in Colorado, telephoning Waldner in Colorado to tell him to hold the check until Frandsen had funds to cover it. A few weeks later, Frandsen telephoned Waldner in Colorado to tell him to date and negotiate the check. Waldner did so, but the check was returned to Rocky Mountain marked "NSF," showing insufficient funds.

Rocky Mountain brought a bad check claim against Frandsen in Colorado District Court. Frandsen was served in Utah with the Colorado summons and complaint. After he failed to answer, the district court entered a default judgment against him.

Rocky Mountain filed the Colorado judgment in Utah, under the Utah Foreign Judgment Act, Utah Code Ann. §§ 78–22a–1 to 22a–8 (1992). In response, Frandsen filed a motion in Utah, seeking to set aside Rocky Mountain's judgment on the ground that Colorado lacked personal jurisdiction over him. The district court ordered that the judgment be vacated and set aside. Accordingly, we address the issue of Colorado's personal jurisdiction over Frandsen.

### ANALYSIS

"The regularity and validity of a foreign judgment, including issues concerning the foreign court's jurisdiction, should be tested by the law of the jurisdiction where the

judgment was rendered." *Pettit v. American Nat'l Bank*, 649 P.2d 525, 527 (Okla. 1982).

Personal jurisdiction means "the power to subject a particular defendant to the decisions of the court." *Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109, 1113 (Colo.1991). A court may take personal jurisdiction of a nonresident defendant if the requirements of due process [1] and the state's long-arm statute are met. *Doe v. National Medical Servs.*, 974 F.2d 143, 145 (10th Cir. 1992). Because the Colorado long-arm statute [2] is "coextensive with constitutional limitations imposed by the due process clause," *Day v. Snowmass Stables, Inc.*, 810 F.Supp. 289, 291 (D.Colo.1993), the statute allows jurisdiction over a nonresident defendant if jurisdiction complies with due process. *Id.* Thus, the issue here is whether Colorado's imposition of jurisdiction over Frandsen met due process standards, a question of law reviewed for correctness. *See State v. Dickey*, 841 P.2d 1203, 1204 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993).

Due process dictates that an out-of-state defendant have such "minimum contacts" with the forum state that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Colorado uses a three-part test to determine whether a defendant has established minimum contacts:

> (1) [A] defendant must purposefully avail herself of the privilege of acting in Colorado or of causing important consequences [t]here; (2) the claim for relief must arise from the consequences in Colorado of the defendant's activities; and (3) the defen-

dant's activities or their consequences must have a substantial enough connection with Colorado to make exercise of jurisdiction reasonable.

*Alameda Nat'l Bank v. Kanchanapoom*, 752 F.Supp. 367, 369 (D.Colo.1990). The test tries to "balance the burden on the defendant with the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Trans–Continent Refrigerator Co. v. A Little Bit of Sweden*, 658 P.2d 271, 273 (Colo.Ct.App.1982). After applying the test here, we conclude that Frandsen's contacts with Colorado were sufficient to allow the Colorado court to take jurisdiction.

Under the first part of the test, we believe that Frandsen purposefully availed himself of and caused important consequences in the forum state. To evaluate purposeful availment, we appraise "the quality, nature, and frequency" of Frandsen's contacts with Colorado. *See Von Palffy–Erdoed v. Bugescu*, 708 P.2d 816, 818 (Colo.Ct.App.1985). "[T]he 'minimum contacts' standard is not susceptible of mechanical application and, instead, involves an *ad hoc* analysis of the facts." *Fleet Leasing, Inc. v. District Court*, 649 P.2d 1074, 1079 (Colo.1982); *see also LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir.1989) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir.1985)) (stating that the number of contacts "has no talismanic significance," but that "'[t]he quality of the contacts as demonstrating purposeful availment is the issue'").

Generally, the more closely related the contacts are to the cause of action for which jurisdiction is being taken, the fewer

---

1. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)).

2. The Colorado long-arm statute, in pertinent part, reads as follows:

(1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, ... submits such person ... to the jurisdiction of the courts of this state concerning any cause of action rising from:
(a) The transaction of business within this state.... Colo.Rev.Stat. § 13–1–124 (Supp. 1994).

contacts are necessary to establish jurisdiction. *Le Manufacture Francaise Des Pneumatiques Michelin v. District Court,* 620 P.2d 1040, 1047 (Colo.1980). In fact, a single act may be enough. *Scheuer v. District Court,* 684 P.2d 249, 251 (Colo.1984) (citing *McGee v. International Life Ins.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Physical presence is not necessary, *Waterval v. District Court,* 620 P.2d 5, 8 (Colo.1980); thus, "contact with the forum state by telephone or mail may furnish the necessary minimum contacts essential for the exercise of jurisdiction." *H2O Eng'g, Inc. v. Leidy's, Inc.,* 799 P.2d 432, 433–34 (Colo.Ct.App. 1990), *rev'd on other grounds,* 811 P.2d 38 (Colo.1991).

Here, Frandsen initiated four contacts with Colorado, all related to Rocky Mountain's action. Frandsen made his first phone call to Colorado to discuss with Rocky Mountain the staking of his mine claims. He rejected the option of hiring a Utah firm and instead "deliberately 'reach[ed] out beyond'" Utah to discuss the staking of his claims with a Colorado company. *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2186 (alteration in original) (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929 (1950)). Although the fact that a defendant initiates a business transaction is not dispositive, it tends to confirm the purposeful direction of the defendant's activities toward the forum state. *See, e.g., McGee,* 355 U.S. at 221–23, 78 S.Ct. at 200–01; *Ruggieri v. General Well Serv.,* 535 F.Supp. 525, 535 (D.Colo.1982). *But see Trans–Continent,* 658 P.2d at 273. In this case, Rocky Mountain never would have performed valuable staking services for Frandsen—and lost valuable hours pursuing its bad check claim against him—if he had not initiated the work.

Frandsen's three subsequent contacts involved his attempt to pay for Rocky Mountain's services. He sent a check to Rocky Mountain in Colorado, then made two calls to Colorado about when to negotiate the check. Several cases have held that the sole act of executing a note payable in Colorado meets the minimum contacts requirement of due process. *E.g., Kingston v. Brussat,* 698 F.Supp. 215, 216 (D.Colo.1988); *Halliburton*

*Co. v. Texana Oil Co.,* 471 F.Supp. 1017, 1019 (D.Colo.1979). For the purposes of our minimum contacts analysis, a check is similar to a promissory note. Both are forms of "negotiable instruments," Colo.Rev.Stat. § 4–3–104 (1992), and both have been construed as "contracts." *Bull v. First Nat'l Bank,* 123 U.S. 105, 110, 8 S.Ct. 62, 63, 31 L.Ed. 97 (1887) (check implies contract); Restatement (Second) of Contracts § 6 cmt. d (1979) (stating that negotiable instruments are formal contracts); *e.g., Derry Fin. N.V. v. Christiana Cos.,* 616 F.Supp. 544, 546 n. 2 (D.C.Del. 1985) (holding that promissory notes are "variety of contract"). This situation in which Frandsen sent a check payable to a Colorado plaintiff is similar to the promissory note cases, and provides—along with the other facts in this case—the requisite minimum contacts for Colorado to extend jurisdiction.

That Frandsen's check was not backed by sufficient funds seals our conclusion that he purposefully directed his activities toward Colorado and caused important consequences there. The passing of bad checks violates both criminal and civil laws in Colorado. Colo.Rev.Stat. §§ 13–21–109 (Supp.1994) (civil) & 18–5–512 (1986) (criminal). Consequently, attempting to pay for services with a bad check is a more substantial contact with a state than paying for services with a good check. *Cf. Lichina v. Futura, Inc.,* 260 F.Supp. 252, 256 (D.Colo. 1966) (holding that, for jurisdictional purposes, sale of dangerous product is more substantial contact with state than sale of harmless one).

We therefore conclude that Frandsen purposefully availed himself of the opportunity to transact business with a Colorado firm and to cause important consequences in that state.

Applying part two of the test, we find that Rocky Mountain's claim for relief arose from the consequences in Colorado of Frandsen's activities. Frandsen authorized the negotiation of his bad check in Colorado, causing Rocky Mountain economic injury in Colorado. Those financial ramifications support our conclusion that Rocky Mountain's cause of action flowed from Frandsen's conduct.

In the third part of our analysis, we determine that Frandsen's activities and their consequences had a substantial enough connection to Colorado to make the exercise of jurisdiction reasonable. The Colorado legislature has declared the following about issuing bad checks:

[A]s a matter of policy ... the issuance and delivery of a known bad check by any person is, in itself, not only harmful to the person to whom it is given but is also *injurious to the community at large* and is, therefore, a proper subject for criminal sanction....

Colo.Rev.Stat. § 18–5–512(1) (1986) (emphasis added). Because Colorado deemed this bad check harmful not only to Rocky Mountain but to the people of Colorado, the bad check action had a substantial connection to that state. Accordingly, Colorado had great "interest in adjudicating the dispute." *Trans–Continent,* 658 P.2d at 273. When Frandsen authorized the negotiation of his bad check in Colorado, he should have "reasonably anticipate[d] being haled into court" in that jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

## CONCLUSION

We hold that Colorado had personal jurisdiction over Frandsen; thus, we reverse the trial court's order granting Frandsen's Motion to Vacate and Set Aside Plaintiff's Foreign Judgment and remand for further proceedings.

BILLINGS and ORME, JJ., concur.