## William Phelps and another v. Reuben Town and another.

*Definition, "Currency."* Where a certificate of deposit, by its terms, was made payable "in currency," it was *held*, prima facie, to mean money current by law, or paper equivalent in value circulating in the business community at par.

*Witness, when an expert.* Where a witness—a banker in Detroit—was asked what kind of money a certificate of deposit (issued in Chicago) was payable in, without referring to any local custom or usage, or introducing evidence as to his knowledge of the laws of Illinois relating to the question; *held*, that the question was one purely of law.

*Justice's Court, effect of money paid in.* Where in a suit upon a note before a Justice, defendant paid money thereon in open court; *held*, that the effect upon the rights of the parties was the same as when paid into a court of record under the practice there prevailing. *Held* further, that no rule or order is necessary when it is paid at the time of, or prior to the plea. If after plea, a motion should probably be made for leave.

*Heard April 13th and 14th. Decided July 11th.*

Error to Wayne Circuit.

The plaintiffs in error endorsed two notes made by one T. S. Coats, which were given to the defendants in error.

Coats sent to the defendants in error a letter enclosing as a payment a certificate of deposit given by the Western Marine and Fire Insurance Co., of Chicago, reciting that Coats "has deposited with this company five hundred dollars in currency, payable to the order of himself on return of this certificate." It was duly endorsed by Coats to defendants in error. This letter and certificate were received by them on the 15th November, 1860; on the same day they acknowledged its receipt, and wrote to him that they would send the certificate to Chicago, and allow him what it was worth; they sent it to their correspondent at Chicago, with directions to collect it and forward exchange on New York. On the 17th, as exchange could not be obtained, the correspondent sent to defendants in error $500 of the bills of Illinois and Wisconsin banks. When the bills were received at Detroit, they were at a discount of from seven to ten per cent. On the 30th November the defendants in error informed Coats, by letter, of western money being returned for the certificate, and that it

was from eight to ten per cent. discount, and asking what they should do with it. On the 12th of December Coats replied that he could not stand any six to seven per cent. discount, as he had deposited current funds; that he still owed them, and asked them to wait for it, and he would pay ten per cent.

The defendants in error kept the bills for several months, and not hearing from Coats sold them for $275. A portion of the avails they applied to pay the balance due on one note, and endorsed the balance on the note upon which this suit was brought.

The suit was originally commenced in a justice's court. The plaintiff in error pleaded the general issue and paid into court $43.60—the balance due on the note, if the transfer of the certificate was a payment of $500—and also paid the costs of suit to that time. The case was tried, and the justice rendered a judgment in favor of plaintiffs in error. The cause was then appealed to the Circuit Court; the justice setting forth in his return that "defendant plead the general issue, *and payment into Court for* $43.60, *and costs to time of payment*;" but not returning the money. On the trial, by jury, the defendants in error asked David Preston, a banker in the City of Detroit, " *What kind of money is that certificate payable in?*" Objection was made, overruled, and an exception taken. The jury brought in a special verdict. The court thereupon ordered judgment to be rendered for the entire balance of the note, deducting only the money endorsed by defendants in error as proceeds of the bills sold, without deducting the money paid into the Justice's Court.

*D. C. Holbrook*, for plaintiff in error.

1. The court erred in allowing the witness Preston, to answer the question, to wit:

" What kind of money is that certificate payable in ?"

The plaintiffs in error contend that this certificate was payable in the legal current coin of the United States, or its

equivalent, and that the word currency has a settled meaning, and not open to explanation.—24 *N. Y.* 548; 20 *Ill.* 145, 255; 21 *Id.* 101; 27 *Id.* 525; 28 *Id.* 463; 32 *Id.* 74.

The admission of parol testimony that this certificate was payable in Illinois and Wisconsin currency, or anything that the banks received and paid out as money, other than gold and silver, was erroneous.

2. Judgment was rendered for the whole balance, not allowing the money paid into court. This was clearly error.

The money was paid in without objection being made by defendants in error. Whether according to any established rule or proceeding is a matter of no consequence; no objection being made.

When paid in, it absolutely belonged to defendants in error. — *Caines, Pr.* 174. The plaintiffs in error could never take it out, even though it be paid in by mistake.—2 *B. and P.* 392; 2 *T. R.* 645; *Barnes,* 279–281–284. It must be considered as so much stricken out of the declaration.—2 *Cow.* 336; 1 *Wend.* 191; 1 *Burrill's Pr.* 408.

A plaintiff can only recover the balance over amount paid in; and it is the same as if paid before action brought.—3 *T. R.* 657; *Tidd's Pr.* 569–70; *Caines' Pr.* 174.

*Maynard, Meddaugh and Swift,* for defendants in error.

On the trial of this cause, in the Circuit Court, it was claimed by the defendants, that the certificate of deposit set forth in the special verdict was, by construction of law, payable only in gold and silver, and that parol evidence was inadmissible, to show that it was payable in anything else.

The court below, however, permitted the plaintiffs to introduce evidence of what was understood among the business men and bankers of Chicago, by the word " currency"; and the witness, Preston, who was a banker, and acquainted with the usages and customs of such business men and bankers, in the course of his examination, was asked the question set forth in the bill of exceptions. He was not asked to give his opinion

as a matter of law, but simply to state in what kind of money, according to such usages and customs, said certificate would be payable.

1. The certificate stated that Coats had deposited five hundred dollars in "currency," to be paid on the return of the certificate. Upon its face it showed that something besides gold and silver was intended; otherwise the word "currency" was useless.—9 *Ind.* 135. By ordinary and fair construction of the word "currency," the certificate in question was payable in funds current, when it was made.

If this be so, then, before it could be determined whether the certificate was payable in the funds which it called for, it was necessary to show what those funds were, and the testimony objected to was admissible.

2. But admitting that, according to the ordinary construction of such an instrument, it was payable in gold and silver, we claim that we have a right to show that the word "currency" had, by the usage and custom of business men and bankers in the place where the certificate was made, acquired a different meaning.—2 *Phil. Ev. with Cowen & Hill's notes,* 726; 1 *Greenl. Ev.* § 292; 23 *Wend.* 71.

The decisions are conflicting as regards the meaning of the word "currency;" but it will be found that they have been influenced by the state of the money market at the time when made. The courts have been disposed to do justice between the parties, rather than lay down an inflexible rule of universal application.

In the following cases it was held that by the word "currency" is meant current bank notes:—5 *Ark.* 266; 6 *Id.* 255; 5 *Littell,* 335; 7 *Mis.* 595; 20 *Ill.* 144; 21 *Id.* 101; 27 *Id.* 525; 28 *Id.* 463, 501; 30 *Id.* 399.

In all these cases the question seems to have been, whether a depositor of "currency" was bound to take the same kind of paper which he had deposited, when it had ceased to be current, and had depreciated so as to be worth no more than 50 or 60 cents on the dollar. In none of the cases was it

decided that a tender of funds, current at the time of the demand, would not have been good. On the contrary, it is, if not expressly decided, strongly implied, that such a tender would have been good. And in none of the cases does it appear that the plaintiff was not willing to take such funds; and the only question was, whether he was bound to take depreciated paper.

3. But, admitting that the certificate was payable in gold and silver, the plaintiffs acted upon the supposition that it was payable in Western money, and collected it in that kind of currency, and so informed Coats, who, instead of objecting to their view, or to what they had done, found no fault with what had been done, and directed the plaintiffs to hold it for him. Under these circumstances, we claim that he is estopped from setting up this claim now.

4. The only remaining question is, whether the sum paid into the Justice's Court, ought to have been credited to defendants in the Circuit Court.

According to the practice in courts of record, in such cases, a rule is entered, giving the defendants leave to pay money into court, and providing that unless the plaintiff will receive the same, with costs to be taxed, in full discharge of his action, said sum shall be struck out of his declaration, and that the same shall be paid out of court to the plaintiff or his attorney.—1 *Tidd's Prac.* 621; 1 *Burrill's Prac.* 407; 2 *Id.* 447; *Green's Prac.* 313.

And unless the money be paid in under such rule, the plaintiff's right to recover will not be affected, nor can he compel the payment of the money to himself; and the defendant may at any time withdraw it.—1 *Wend.* 103; 7 *Iredell* 201; 1 *Swan,* 92; 1 *Allen,* 145.

There being no authority given by statute to Justices of the Peace to receive money paid into court, or to enter such rules, or to compel the plaintiff to take money, or to restrain the defendant from withdrawing it, how can it be claimed that such payment affects the plaintiff's rights to recover?

Such action of the Justice would be extrajudicial, and would not bind either party. If, at any time, the defendant demands the money, can the Justice refuse to pay it to him? If not, how can the plaintiff's right be affected by such payment? —9 *Jones,* 196.

5. Again, to have entitled the defendants to avail themselves in the Circuit Court of the payment before the Justice, it should have been certified in his return to have been made before him.—1 *E. D. Smith,* 398.

CHRISTIANCY J.

The certificate of deposit was by its terms payable "in currency." *Prima facie,* at least, this must be held to mean money current by law, or paper equivalent in value circulating in the business community at par. Such, we think, is the general signification, the fair import and ordinary legal effect of the term.

Whether it would have been competent to prove that the term had acquired, by local usage or custom, a different signification at Chicago, which, by the laws of Illinois, would be recognized for the purpose of giving a different interpretation to the contract, we are not, in the present aspect of this case, called upon to decide, as it does not appear that any such evidence was given or offered, and we prefer to reserve our opinion upon the point until the question shall be presented in such a manner as to call for a decision.—See *Ehle v. Chittenango Bank,* 24 *N. Y.* 548; *Swift v. Whitney et al.* 20 *Ill.* 145; *Moore v. Morris, Id.* 255; *Trowbridge v. Seaman,* 21 *Id.* 101; *Marine Bank v. Chandler,* 27 *Id.* 525; *Osgood v. McConnell,* 32 *Id.* 74; *Marine Bank v. Rushmore,* 28 *Id.* 463; *Fire and Marine Ins. Co. v. Tincher,* 30 *Id.* 399.

The question put to the witness Preston did not call for evidence of any such local usage or custom, or of any local signification thereby acquired. He was asked, "what kind of money the certificate was payable in," without referring to any local custom or usage; and, as such, the question was one

purely of law, and it does not appear that he was an expert or in any manner competent to testify as to the laws of Illinois. So far as the record discloses anything upon this point, it furnishes an inference that he was not competent for this purpose; he is stated to be a banker in the city of Detroit. To make such a question admissible, it should appear that he was conversant with the laws of Illinois in relation to this question. His answer did not tend to correct the error of the question, as it does not allude to any local usage or custom, or any local or peculiar signification dependent thereon. This question being objected to, the Court erred in admitting it, and allowing the answer to go to the jury; for though it does not appear whether any, or what other evidence was given in the case upon this point, still, as we cannot say how far the jury were influenced by this improper evidence, this error vitiates the special verdict; and a new trial must be granted on this ground. For these reasons we do not deem it proper to pass upon the questions depending upon the facts found by the special verdict in reference to this point, as a new trial may present quite a different state of facts.

But there is one point not dependent upon the special verdict which will naturally arise upon a new trial, and which, for that reason, we deem it proper to notice here.

This cause was appealed from a Justice's Court to the Circuit; and it appears from the return of the Justice that the defendants had "pleaded the general issue, and payment into court of $43 $\frac{60}{100}$ balance due plaintiffs, and two $\frac{34}{100}$ dollars costs of suit in the case, to the time of payment."

It is not to be supposed that the Justice would have noticed or allowed such a plea unless the money was in fact paid into court. And as it is apparent from the judgment rendered by him, and the proceedings in the Circuit that he received the plea and found the sum so paid into court to be all that was due the plaintiffs, we think his return equivalent in effect to a direct and positive return of such payment. This fact is also found by the special verdict, but the Circuit Court, in

rendering judgment upon the verdict, did not allow to the defendants the amount so paid; on the ground, as we suppose from the argument, that the money was not returned by the Justice, and not paid into the Circuit Court according to the practice of that Court in actions originally brought there.

This raises the question, whether it is competent for a defendant in a Justice's Court to avail himself of a payment into court in the like classes of actions in which it would be competent for him to do so in the Circuit Court; and if so, what is the effect of such payment?

The statute conferring jurisdiction upon Justice's Courts provides (*Comp. L.* § 3656), that "each of said courts is hereby vested with all such powers for the purpose of exercising jurisdiction conferred by this chapter, as are usual in courts of record, except the power of setting aside a verdict and arresting judgment thereon." And having given to such courts exclusive jurisdiction to try all civil actions (with certain specified exceptions) wherein the debt or damages do not exceed the sum of one hundred dollars, and concurrent jurisdiction in all actions upon contract, express or implied, wherein the debt or damages do not exceed three hundred dollars, (except in specified cases), we think it is but reasonable to infer the legislative intent to give to defendants in such actions the benefit of the same defences to which they would be entitled in similar actions in courts of record. The organization of the court does not require or permit the same formal mode of procedure, upon payment of money into court, as that practiced in courts of record. The Justice has no clerk and no common rule book. His court has no stated terms or vacations. In courts of record, as the money is not often paid in open court, but in vacation at, or prior to, the filing of a plea, and is never paid to the Judge but to the proper subordinate officer of the court (in this country to the clerk), the entry of rules and orders is highly proper to preserve the evidence of the fact, as well as to hold such officer to his responsibility. But no consideration of this kind or of convenience requires

such a procedure in a Justice's Court. The money may be paid directly to the Justice in open court, who receives it in his official capacity for the plaintiff, to whom it belongs, and to whom he is bound to pay it upon request. No rule or order is requisite when paid at the time of, or prior to the plea; if after plea, a motion should probably be made for leave.

When paid to the Justice in open court, the effect upon the rights of the parties is the same as when paid in a court of record under the practice there prevailing. It belongs to the plaintiff absolutely. The defendant cannot reclaim it, though paid by mistake. So much of the plaintiff's claim is considered as stricken out of the declaration, and he can only recover the balance, if able to prove any; if not, he will be liable to all costs in the further prosecution of the suit.

The money in this case, after its payment to the Justice, being the money of the plaintiffs, we can see no reason for holding defendants thereafter to any responsibility for its disposition or payment. We think they have no further concern with, or control over it. The plaintiffs were entitled to demand it of the Justice at any time, and their refusal or neglect to do so, or their failure to obtain it, cannot affect the further proceedings in the suit, or the rights of the parties one way or the other.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.