## MILLIKAN v. SECURITY TRUST COMPANY.

[No. 22,876. Filed February 7, 1918. Rehearing denied April 5, 1918.]

1. BILLS AND NOTES.—*Negotiability.—"At."—Place of Payment.* —The fact that a note is payable "at" instead of "in the office of" a trust company does not render it nonnegotiable, since a note payable "at" a bank is in legal contemplation payable "in" the bank or "in the office of" the bank at the counter where banking business is done. p. 309.

2. BILLS AND NOTES.—*Negotiability.—"Bank."—Place of Payment.*—Banks being of three kinds—those of deposit, deposit and discount, and issue—a trust company organized under §4956 Burns 1914, Acts 1893 p. 344, though limited in its powers, is an institution of deposit and check, and is therefore a bank within the meaning of §9076 Burns 1914, §5506 R. S. 1881, making notes payable in a bank in this state negotiable. p. 309.

3. BILLS AND NOTES.—*Place of Payment.*—The reason for the enactment of §9076 Burns 1914, §5506 R. S. 1881, was to fix, as one element of negotiability, a place, a named bank, where a note should be paid, that the holder might there protest and fix liability against endorsers and makers. p. 310.

4. BILLS AND NOTES.—*Rate of Interest.*—A note providing for "eight per cent. interest from maturity," and which is otherwise regular, is negotiable. p. 310.

5. BILLS AND NOTES.—*Action by Endorsee.—Defenses.—Pleading.*—In an action on a note by an endorsee, answers based on fraud and no consideration are bad, in the absence of an allegation that the endorsee had notice of such infirmities. p. 310.

6. APPEAL.—*Harmless Error.—Sustaining Demurrer.*—The sustaining of a demurrer to verified paragraphs of answer denying execution and endorsement of a note was harmless, where the evidence was admissible under paragraphs of verified *non est factum* afterwards filed. p. 311.

7. PLEADING.—*Demurrer.—Motion to Strike.—Want of Verification.*—Where a paragraph of answer is not verified, the proper practice is a motion to strike out; a demurrer admits and waives the verification. p. 311.

8. BILLS AND NOTES.—*"Currency."—"Money."*—A certificate of deposit payable in "current funds" or in "currency" is payable in "money" and is therefore negotiable as an inland bill of exchange. p. 312.

9. CORPORATIONS.—*Foreign Corporations.—Collateral Attack.—* In an action by an endorsee, a paragraph of answer alleging that the payee of the note in suit was a foreign corporation and that it failed to comply with Acts 1907 p. 286, §4085 *et seq.* Burns 1914, but alleges that it obtained a certificate from the secretary of state before the transaction in question, is a collateral attack on the right of such corporation, which can be made only by the state in a direct proceeding. p. 313.

10. PLEADING.—*Written Instruments.—Setting Out or Attaching as Exhibits.*—In an action on a note, where the maker defends on the ground of fraud consisting of certain written statements as to the financial condition of the payee corporation, from which the maker bought stock, it was not necessary to set out such statements in the answer or as exhibits, since such statements were not the foundation of the defense within the meaning of §368 Burns 1914, §362 R. S. 1881, but were only evidence of an element in it. p. 314.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by the Security Trust Company against Lynn B. Millikan. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*William F. Elliott, Paul & Paul* and *Elmer Bassett,* for appellant.

*Leander J. Monks, John F. Robbins, Henry C. Starr James P. Goodrich,* and *Carl H. Weyl,* for appellee.

TOWNSEND, J.—Appellee, as holder by endorsement before maturity, obtained judgment against appellant on the following promissory note:

"No.......... Due......... $5,000.00
"Indianapolis, Ind., Nov. 1, 1912.
"June 1st, 1913, after date we or either of us promise to pay to the order of Columbus Securities Company, Five Thousand Dollars, negotiable and payable at Aetna Trust and Savings Company, Indianapolis, Indiana, with eight per cent. interest from maturity and attorney's fees. Value received without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note.
"Address............ Lynn B. Millikan."

To appellee's complaint on this note appellant filed eight paragraphs of answer—a general denial and seven paragraphs of special answer. Demurrer to each paragraph of special answer was sustained. Appellant then filed two paragraphs of verified *non est factum*—one denying execution of the note and the other the execution of the endorsement.

The errors assigned call in question the rulings on the demurrers. Appellant contends that the note is not negotiable: First, because it is payable "at"

1. instead of "in the office of" the trust company.

There is no merit in appellant's contention. A note that is payable "at" a bank is in legal contemplation payable "in" the bank or "in the office of" the bank at the counter where banking business is done. The words "in" and "at" in this connection are to be given the meaning which is accepted by persons of ordinary understanding.

Appellant next contends that the proviso in §13 of the act authorizing the organization of loan and trust companies (Acts 1893 p. 344, §4956 Burns 1914)

2. is unconstitutional because it is not within the purview of the title. This need not be decided, for a trust company organized under this act is a bank within the meaning of §9076 Burns 1914, §5506 R. S. 1881, making notes payable in a bank in this state negotiable. Banks are of three kinds: those of deposit, deposit and discount, and issue. An institution which does any one or all of these things is a bank. *Oulton* v. *German Savings Institution* (1872), 84 U. S. (17 Wall.) 109, 21 L. Ed. 618; *Bank for Savings* v. *The Collector* (1865), 70 U. S. (3 Wall.) 495, 18 L. Ed. 207. Subdivision 3 of §10 of the Loan and Trust Company Act, *supra,* defining the power of such company, is as follows: "To take, accept and hold on deposit, or for safe keeping, any and all moneys, bonds, stocks or other

securities or personal property whatsoever, which any state, county, city, or town officer, or any officer in any railroad or other corporation, public or private, or private person, shall be authorized or required by law or otherwise to deposit in a bank or other safe deposit." It will be seen that under this section such company is authorized to accept deposits against which checks may be drawn; and, while it is true that such companies are limited in their powers as a bank, yet they are banks of deposit and check, and therefore banks in the generic sense of that term.

Section 9076 Burns 1914, *supra,* provides: "Notes payable to order or bearer in a bank in this state shall be negotiable as inland bills of exchange and the payees and endorsees thereof may recover, as in case of such bills." The purpose of the legislature was to fix, as one element of negotiability, a place, a named bank, where such note should be paid, that the holder might there protest and fix liability against endorsers and makers. It is also a safe and convenient place for the holder to leave the note and the maker to leave the money at maturity.

Appellant next contends that the instrument in suit is not negotiable because it bears eight per cent. interest from maturity. There is no merit in this contention. §7950 Burns 1914, §5198 R. S. 1881.

We therefore hold that the note in suit is negotiable as an inland bill of exchange.

The note being negotiable and, according to the allegations of appellee's complaint, purchased before maturity in due course of business, we shall now examine appellant's answer. Appellant's second paragraph of answer is that the note was given without consideration. His fifth paragraph is fraud which induced the execution. Both paragraphs are bad

for failure to allege that appellee had notice of these infirmities.

Appellant's fourth, sixth and seventh paragraphs of answer are argumentative denials of the execution of the note and the endorsement. The fourth and sixth paragraphs are verified. Appellant was not harmed by the sustaining of demurrers to these two because his evidence was admissible under the paragraphs of verified *non est factum,* which he afterwards filed. His seventh paragraph is not verified, and the proper practice is a motion to strike out such a pleading for want of verification. A demurrer admits the facts and waives the verification. *Pudney* v. *Burkhart* (1878), 62 Ind. 179; *Lange* v. *Dammier* (1889), 119 Ind. 567, 21 N. E. 749; *Champ* v. *Kendrick* (1892), 130 Ind. 549, 30 N. E. 787. Appellant was not harmed, however, by the sustaining of the demurrer to this paragraph because his evidence was admissible under a paragraph of verified *non est factum,* referred to above.

Appellant's eighth paragraph of answer is in substance that appellee at the time of the purchase of said note executed in payment therefor a certificate of deposit, as follows:

"Security Trust Company.

"Certificate of Deposit        No. 2341

Indianapolis, Ind., Dec. 4th, 1912.

'American Standard Life Assurance Co. has deposited with this company Five Thousand Dollars payable to the order of same, in current funds on the return of this certificate properly endorsed. June 1st, 1913. With interest at two per cent per annum for the time specified only. Not subject to check.

Countersigned:      R. A. Young, Secretary
                    Bert McBride, President."

Then this paragraph is in substance that the note was

dishonored at maturity; that appellee had notice of the dishonor; and that appellee with such notice paid the certificate. If the certificate is not negotiable, the paragraph is good. If it is negotiable, the paragraph is bad.

Appellant contends that this certificate is not negotiable because it is payable in "current funds." One of the elements of negotiability is that an instrument be payable in money, and the question is whether "current funds" means money. There is some confusion in the decisions of this court on this point. In the case of *Drake* v. *Markle* (1863), 21 Ind. 433, 83 Am. Dec. 358, a certificate of deposit payable "in currency" was held to be payable in money and negotiable. Although no particular stress seems to have been laid upon the point of its being payable in "currency," yet the court sets out the instrument and seems to have had this question in view. In the case of *National State Bank, etc.* v. *Ringel* (1875), 51 Ind. 393, this court held that a certificate of deposit payable "in current funds" was not negotiable because it lacked one of the essentials, not being payable in money.

Beginning with the issue of United States Treasury notes, declared to have the quality of legal tender, it has been the practice of drawers of bills of exchange

8.   and makers of promissory notes to indicate payment in gold or silver or such notes, and from that time the terms "current funds" and "currency" have been used to designate any of these, all being current and declared by statute to be legal tender. The better rule now seems to be that instruments of the kind in question, payable in "current funds" or in "currency," are payable in money. *Bull* v. *Bank of Casson* (1887), 123 U. S. 105, 8 Sup. Ct. 62, 31 L. Ed. 97; *Phelphs* v. *Town* (1866), 14 Mich. 374; *Butler* v. *Paine*

(1863), 8 Minn. 324 (Gil. 824); *Forrest* v. *Safety Banking, etc., Co.* (1909), 174 Fed. (C. C.) 345; *Hatch* v. *First Nat. Bank* (1900), 94 Me. 348, 351, 47 Atl. 998, 80 Am. St. 401; *Kirkwood* v. *First Nat. Bank* (1894), 40 Neb. 484, 58 N. W. 1016, 24 L. R. A. 444, 42 Am. St. 683. We therefore hold that this certificate of deposit is payable in money and is negotiable as an inland bill of exchange. *National State Bank, etc.* v. *Ringel, supra,* is overruled on this point.

Appellant's third paragraph of answer covers fifteen pages of his printed brief and is confusing in its allegations. It alleges that the payee of the note is a foreign corporation and did not comply with the acts of 1907 (Acts 1907 p. 286, §4085 *et seq.* Burns 1914), but it alleges that it obtained a certificate from the secretary of state before the transaction in question. Appellant cannot thus attack collaterally the right of such a corporation. This is for the state in a direct proceeding. He also alleges that the American Standard Life Assurance Company, for which the stock in the Columbus Securities Company was sold to make capital and surplus, was not organized according to the laws of the State of Indiana; and yet he alleges that it received a certificate from the state nearly a year before. This is a collateral attack, and besides appellant was buying with his note stock in the Columbus Securities Company and not in the American Standard Life Assurance Company.

Appellant sets out, as a part of this paragraph, what is termed a "Syndicate Agreement" which he signed, in which he was given certain options as to stock in the Columbus Securities Company. There is nothing in this agreement to destroy the good faith of a purchaser of the note in suit, even if such purchaser had notice. True, appellant alleges that the note was to be deposited with the trustee under this syndicate agreement and

not to be cashed; but the agreement directly contradicts this, its language being "that all amounts, either cash or cash received from said notes, shall be deposited" with the trustee.

There are many other contradictory allegations which need not be set out. The paragraph is filled with epithets of fraud where the allegations do not sustain them. It is obvious that 'appellant is proceeding on the theory of fraud, and, in the midst of the allegations to which we have referred, we find this, in substance: That the Columbus Securities Company, payee of the note, caused to be exhibited to appellant printed and written statements showing that it had assets on January 1, 1912, of the value of $2,-178,000, over and above its debts, and had assets on September 30, 1912, of the value of $2,429,702.98, over and above its liabilities; that the statements were false, as the payee of the note knew, and were exhibited with intent to deceive appellant; that appellant relied on these statements and believed them to be true and was induced thereby to purchase the stock and execute the note in suit; that said company was insolvent; that the stock for which said note was given was worthless. Then, after several pages of allegations, similar to those first considered in this paragraph of answer, appellant ends with the pertinent allegation, in substance, that appellee had notice of all the facts at the time it purchased the note in suit.

Appellee contends that appellant should have set out in this paragraph of answer, or attached thereto as exhibits, these printed and written statements, pursuant to §368 Burns 1914, §362 R. S. 1881.

In this appellee is in error. The printed and written statements are not the foundation of appellant's defense, but are simply evidence of an element in it. The allegations in this paragraph of answer that the

payee of the note, by these false written and printed statements on which appellant relied, induced him to execute the note in suit, and that the appellee had notice thereof, make this paragraph sufficient; and the court erred in sustaining demurrer thereto.

Other questions are presented which need not be decided, because they will not arise on retrial of this cause. The quality of the note in suit and the certificate of deposit given therefor being determined, the pleadings in this case may be confined to less confusing limits.

Judgment reversed, with instructions to overrule the demurrer to the third paragraph of answer and for other proceedings not inconsistent with this opinion.

NOTE.—Reported in 118 N. E. 568. Bills and notes: naming place of payment in note, effect, 34 Am. Dec. 308; meaning of "at" when used to denote place of payment, Ann. Cas. 1912B 1071. See under (1-3) 8 C. J. 142; (4) 8 C. J. 147; (5) 8 C. J. 916, 930; (8) 8 C. J. 131; (9) 19 Cyc 1288.