## FIRST STATE BANK OF ANNONA et al. v. HIDALGO LAND CO. (No. 2809.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 23, 1923. Rehearing Denied Dec. 6, 1923.)

1. Bills and notes ⬅381—Depositor induced by fraud to assign certificate of deposit cannot rescind and so prevent innocent holder from recovering from bank.

That the holder of a certificate of deposit was induced by fraud to assign it to a creditor gives him no right to rescind the contract and recover the property from an innocent holder for value so as to defeat the latter's right to recover from the bank issuing it.

2. Bills and notes ⬅162—Negotiability of instrument not affected by words "current funds" so as to permit remote assignor to assert against innocent holder defenses against intermediate assignee.

In view of Negotiable Instruments Act, § 6 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001 —6) which declares the negotiability of an instrument not affected by its designation of a particular kind of "current money" 'in which payment is to be made, the term "current funds" in a certificate of deposit assigned by the holder to a creditor, which sold it before maturity to an innocent purchaser for value,

did not destroy its negotiability so as to entitle the original holder, as a remote assignor, to set up fraud by the intermediate assignee, under Rev. St. art. 586, in defense to a suit thereon by such innocent purchaser; defendant being liable as an indorser regardless of his defenses against his assignee.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Action by the Hidalgo Land Company against the First State Bank of Annona and another, in which H. S. Whiteman intervened. From a judgment against the named defendant and intervener, they appeal. Affirmed.

Austin S. Dodd, of Clarksville, for appellants.

Lennox & Lennox, of Clarksville, for appellee.

HODGES, J. On. January 6, 1921, the First State Bank of Annona, one of the appellants, issued the following certificate of deposit to H. S. Whiteman:

"The First State Bank.　　　No. 72.
　　"Annona,. Texas, January 6th, 1921.
　"This certifies that H. S. Whiteman has deposited in this bank five thousand three hundred fifty-nine and no/one hundredth dollars, $5,359.00, in current funds, payable to the order of self on 8 months after date in current funds on the return of this certificate properly indorsed, with interest at the rate of five per cent. per annum from January 6th, 1921, to September 15th, 1921.
　　　　　　"L. B. Pool, Cashier.
　"Certificate of Deposit. Guaranty Fund Bank. No interest after maturity. This deposit is not subject to check."

Thereafter Whiteman indorsed and transferred the certificate to the Stewart Farm Mortgage Company, a Missouri corporation, which at that time had a permit to do business in the state of Texas. This transfer was made in payment of an indebtedness due from Whiteman to the farm mortgage company. Before its maturity the Stewart Farm Mortgage Company for a valuable consideration sold and conveyed the certificate to the appellee, the Hidalgo Land Company. The certificate not being paid at maturity, in October, 1921, the Hidalgo Land Company filed suit against the bank as maker, and the Stewart Farm Mortgage Company as assignor, or indorser. The bank answered admitting the execution of the certificate, but defended its refusal to pay upon the ground that it had been notified that the assignment from Whiteman to the Stewart Farm Mortgage Company had been procured by fraud. The Stewart Farm Mortgage Company made no answer, and was subsequently dismissed from the suit.

Whiteman, by the same·attorney who represented the bank, filed a plea of interven-

tion, alleging fraud on the part of the Stewart Farm Mortgage Company in procuring the assignment of the certificate from him. It appears from his answer that some time prior to the issuance of the certificate he had been induced to purchase a tract of land from the Stewart Farm Mortgage Company situated in Hidalgo county, Tex.; that in payment of the purchase price of this land he had executed several promissory notes, aggregating $12,200; that after paying about half of these purchase-money notes and securing a deed to the land he executed a series of negotiable notes for the remainder, maturing at stated intervals in the future. A short time thereafter, and before these notes matured, the Stewart Farm Mortgage Company offered to discount the debt and surrender these purchase-money notes for a cash payment equal to the amount of the certificate, which was less than their face value. That offer, he alleges, was accepted, and the certificate herein was procured and conveyed to the Stewart Farm Mortgage Company with the understanding that he (Whiteman) was to have a guaranty of his title and a surrender of all the notes, some of which were not delivered to him at that time. He further alleges that upon the false representations of the agents of the Stewart Farm Mortgage Company he was induced to pay $305 per acre for a tract of land that was not worth over $25 per acre. He asked in his prayer for relief that his damages be allowed as an offset against the plaintiff's demand in this suit, alleging that the plaintiff had notice of the fraud perpetrated upon him by the Stewart Farm Mortgage Company at the time the former acquired the certificate.

The plaintiff filed a supplemental petition alleging that it had no notice of the fraud set up by the intervener; that it was a purchaser in good faith and for a valuable consideration; and asked judgment against the intervener as well as the bank for the amount of the certificate. It also pleaded estoppel, which is not necessary to be considered in the determination of this appeal.

At the conclusion of the testimony the court instructed a verdict in favor of the appellee against both the bank and Whiteman for the amount of the certificate, and judgment was rendered accordingly. Both Whiteman and the bank have appealed, and have executed a joint appeal bond and are represented by the same attorney, who files a joint brief for both. The liability of the bank for the amount of the certificate sued on cannot be controverted under the facts presented on this appeal. It has no defense either in its pleadings or in the evidence.

[1] The first question is, who was entitled to a judgment against the bank—the plaintiff, or the intervener Whiteman? The bank cannot complain, no matter how that issue was decided, since its liability is beyond question, and in this proceeding it will be protected from further liability to both claimants. Hence there was no error, so far as the bank is concerned, in directing a verdict in favor of the appellee.

Whiteman was not the maker of the certificate, but only an assignor; hence the fraud of which he was the victim, and which he here pleads, could not defeat the plaintiff's right to recover against the bank. He cannot here claim the proceeds of the certificate unless he can show a better right to the ownership of the certificate than is asserted by the appellee. That he has failed to do. It is undisputed that he assigned the certificate in payment of a debt which he had contracted to pay to the Stewart Farm Mortgage Company, and that the certificate is now in the hands of an innocent holder for value. The fact that he was induced by fraud to contract for the assignment of the certificate gives him no right to now rescind that contract of assignment and recover the property back from one who was not a party to that transaction.

[2] The remaining question is, Was Whiteman liable in this suit as an assignor or indorser? The money judgment against him can be supported upon no other ground. Article 586 of the Revised Civil Statutes is as follows:

"The assignee of any instrument not negotiable by the law merchant shall be entitled to recover from any previous assignor thereof; but, in any suit brought against a remote assignor of such instrument, he shall be subject only to such recovery and shall have the benefit of all defenses which he would have been entitled to had the suit been instituted by any intermediate assignee."

If the certificate is not a negotiable instrument, Whiteman has pleaded and testified to facts which, if true, might have defeated a suit against him as assignor by the Stewart Farm Mortgage Company, an intermediate assignee. It is apparently admitted that if the certificate is a negotiable instrument that defense is not available in this suit. As showing that the certificate is nonnegotiable appellants rely upon those terms which provide that it is payable in "current funds." In Texas Land Co. v. Carroll, 63 Tex. 48, our Supreme Court held that a draft payable in current funds was nonnegotiable because payable in something besides money. As supporting that conclusion early decisions by the appellate courts of Wisconsin, Iowa, and Indiana were cited, and also an early edition of Daniel on Negotiable Instruments. The opinion concedes that the courts of the different states were in conflict on that subject, but adopts what is there considered the better rule. That decision was rendered in 1885, many years before we had in this state the "Uniform Negotiable Instruments Act." At that time the term "current funds" had probably not acquired so fixed a commercial

signification as it now has. Among the courts which even then held that the use of the words "current funds" did not destroy the negotiable character of a written instrument was the Supreme Court of the United States. See Bull v. Bank, 123 U. S. 105, 8 Sup. Ct. 62, 31 L. Ed. 97. In later cases the Supreme Courts of Indiana and Wisconsin have impliedly, if not expressly, overruled the cases referred to as supporting the conclusion in Texas Land Co. v. Carroll, 63 Tex. 48. See Millikan v. Security Trust Co., 187 Ind. 307, 118 N. E. 568; Klauber v. Biggerstaff, 47 Wis. 551, 3 N. W. 357, 32 Am. Rep. 773. Mr. Daniel, in his work on Negotiable Instruments (5th Ed. § 56), refers to the conflict in the holdings of the various courts on this question, and then thus states his views:

"In business paper it is best to adhere to strict rules; and as certainty is of the first moment in commercial dealings, and as paper payable in fluctuating values is uncertain and delusive, we think sound judgment approves the doctrine of the text. Money alone is legal tender, and only the note which represents money should be held negotiable. It should be expressed simply as payable in dollars, which have a definite signification fixed by law."

It is clear from what Mr. Daniel has said, as well as from other judicial expressions, that the courts, which hold that the use of the term "current funds" as a medium of payment destroys the negotiable character of commercial paper, base their conclusions upon the assumption that nothing is money except that which is a legal tender in the payment of debts, and that "current funds" does not mean such money. It is now well known that the greater portion of the present day commerce of this country is carried on by the use of a form of paper currency, which circulates at par with gold, as an equivalent in money, and is paid out and received as money, but which is not a legal tender under the federal laws. In business transactions the word "money" is no longer restricted to gold and legal tender currency. In that state of commerce the Legislature, in 1919 (Laws 1919, c. 123 [Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197]) enacted what is commonly called the "Uniform Negotiable Instruments Law." Section 6 of that act (article 6001—6) contains this provision:

"The validity and negotiable character of an instrument are not affected by the fact that [it] * * * (5) designates a particular kind of current money in which payment is to be made."

The use of the words "current money" in this connection was manifestly intended to include those forms of currency which are not legal tender in the payments of debts generally, such as the notes of national banks, the notes of Federal Reserve Banks, and silver certificates. All of these forms of currency pass as money, are accepted for deposit by all banks as money, and are treated as money in the payment of debts. A tender of such currency is good unless objected to on account of its character. The statute, then, must be regarded as abrogating the strict rule followed by Mr. Daniel and by our Supreme Court in Land Company v. Carroll.

We come then to the next question: Does the term "current funds" mean the same as current money? In Bull v. First Nat. Bank, supra, the federal Supreme Court thus answers that question:

"Undoubtedly it is the law that, to be negotiable, a bill, promissory note or check must be payable in money, or whatever is current as such by the law of the country where the instrument is drawn or payable. There are numerous cases where a designation of the payment of such instruments in notes of particular banks or associations, or in paper not current as money, has been held to destroy their negotiability. * * * But within a few years, commencing with the first issue in this country of notes declared to have the quality of legal tender, it has been a common practice of drawers of bills of exchange or checks, or makers of promissory notes, to indicate whether the same are to be paid in gold or silver, or in such notes; and the term 'current funds' has been used to designate any of these, all being current and declared, by positive enactment, to be legal tender. It was intended to cover whatever was receivable and current by law as money, whether in the form of notes or coin. Thus construed, we do not think the negotiability of the paper in question was impaired by the insertion of those words."

To the same effect is Kirkwood v. Bank, 40 Neb. 484, 58 N. W. 1016; 24 L. R. A. 444, 42 Am. St. Rep. 683. See, also, cases collected in notes, 125 Am. St. Rep. 198. In Milliken v. Security Trust Co., supra, the Supreme Court of Indiana said:

"Beginning with the issue of United States treasury notes, declared to have the quality of legal tender, it has been the practice of drawers of bills of exchange and makers of promissory notes to indicate payment in gold or silver or such notes, and from that time the terms 'current funds' and 'currency' have been used to designate any of these, all being current and declared by statute to be legal tender. The better rule now seems to be that instruments of the kind in question, payable in 'current funds' or in 'currency,' are payable in money. Bull v. First National Bank of Casson, 123 U. S. 105, 8 Sup. Ct. 62, 31 L. Ed. 97; Phelps v. Town, 14 Mich. 374; Butler v. Paine, 8 Minn. 324 (Gil. 284); Forrest v. Safety Bank Co. (C. C.) 174 Fed. 345; Hatch v. First National Bank, 94 Me. 351, 47 Atl. 998, 80 Am. St. Rep. 401; Kirkwood v. First National Bank, 40 Neb. 484, 58 N. W. 1016, 24 L. R. A. 444, 42 Am. St. Rep. 683. We, therefore, hold that this certificate of deposit is payable in money, and is negotiable as an inland bill of exchange. The National Bank, etc., v. Ringel, supra, is overruled on this point."

In Klauber **v.** Biggerstaff, referred to above, the Supreme Court of Wisconsin, after reviewing the former holdings of that court, says:

"Money is a generic and comprehensive term. It is not a synonym of coin. It includes coin, but is not confined to it. It includes whatever is lawfully and actually current in buying and selling, of the value and as the equivalent of coin. By universal consent, under the section of all courts everywhere, or almost everywhere, bank notes lawfully issued actually current at par in lieu of coin, are money The common term, paper money, is in, a legal sense quite as accurate as the term, coined money."

The editor of Ruling Case Law, after referring to the diversity of holdings with reference to the use of the terms "currency" and "current funds," makes this comment:

"Again many courts have held that a clause providing for payment in 'currency' or 'current funds' does not require payment in money, and hence destroys the negotiability of the instrument. The cases so holding are either cases arising at a time when many forms of bank notes and bills were in use, varying in their values, or cases decided upon the authority of that class, without regard to changed conditions. Commencing with the first issue in this country of notes declared to have the quality of legal tender, it became a common practice of drawers of bills of exchange or checks, or makers of promissory notes, to indicate whether the same were to be paid in gold or silver, or in such notes, and the term 'current funds' has been used to designate in fact any of these; all being current and declared, by positive enactment, to be legal tender. Accordingly the modern and better doctrine is that the terms 'currency' and 'current funds,' when used in commercial transactions as the expression of the medium of payment, should be construed to mean current money, funds which are current by law as money, and that, when thus construed, an instrument payable in currency or current funds is in this respect negotiable. These authorities in substance hold that the terms 'currency' or 'current funds' used in commercial paper, ex vi termini, mean money; it has been held, however, that the term 'currency' means current money, where this interpretation is not controlled by the positive terms of the contract. And some courts have held that evidence may be received to show the meaning of the terms 'currency,' 'current funds.'"

It is a part of the history of our Negotiable Instruments Act that it was framed and adopted in pursuance of an effort to have a law on that subject that would be uniform in terms and in meaning throughout the entire nation. The emergency clause of the act contains the following significant language:

"On account of the fact that the state of Texas has at this time no Uniform Negotiable Instruments Act, and that confusion arises for this reason; that the collection of obligations due citizens of other states by citizens of this state creates an emergency," etc.

There are two conclusions that may now be drawn from the passage of this law. One is that the Legislature intended to enlarge the definition of negotiable instruments beyond the limits which had heretofore been applied by courts holding to the strict rule. The other is that in order to have a uniform rule for construing such terms as "currency" and "current funds," when used in commercial paper, the state courts must follow the lead of the federal Supreme Court and adopt its definition. It is not to be expected that the highest court in the land will abandon its definition of so common a phrase as "current funds" and adopt that of a minority of the state courts. But unless there is some uniform holding adopted much of the good expected from the enactment of the law will be lost.

This court has held, in Clark v. Holder (Tex. Civ. App.) 247 S. W. 699, that a certificate of deposit payable in "current funds" is a negotiable instrument. But that feature of the certificate was not discussed; in fact, in deciding that case it was not necessary to hold that the certificate was negotiable.

In view of the present statute and the foregoing authorities, we are of the opinion that the use of the term "current funds" in the certificate of deposit did not destroy its negotiable character, and that Whiteman was liable as an indorser, regardless of whatever defenses he might have had against the Stewart Farm Mortgage Company.

The judgment will therefore be affirmed.