## SECURITY STATE BANK & TRUST CO. v. MERCHANTS' & FARMERS' STATE BANK. (No. 6888.)

(Court of Civil Appeals of Texas. Austin. June 24, 1925. Rehearing Denied Oct. 14, 1925.)

**I. Bills and notes ⬦164—Provision, in certificate of deposit, for its payment upon return properly indorsed, held not to render certificate nonnegotiable.**

Provision, in certificate of deposit, that payment is to be made on its return properly indorsed, *held* not such a condition as will, under Vernon's Ann. Civ. St. Supp. 1922, art. 6001—4, render certificate nonnegotiable.

**2. Bills and notes ⬦525—Evidence held not to show that purchaser of certificate of deposit was put upon inquiry as to the source of funds evidenced by policy.**

In action to recover on certificate of deposit, evidence *held* not to show that plaintiff bank was charged with notice or put upon inquiry as to the source of funds evidenced by certificate.

**3. Bills and notes ⬦339—That party presenting certificates of deposits did not own them held not to put purchaser on inquiry as to funds evidenced by them.**

That bank purchasing certificates of deposit knew they belonged to a trust concern, with headquarters in a distant city, *held* not to require such bank to inquire into nature of fund for which certificates were executed, when agents presenting certificates possessed power of attorney authorizing them to negotiate certificates.

**4. Bills and notes ⬦354—That certificates of deposit were purchased at a discount of 10½ per cent. held not sufficient to excite suspicion.**

That certificates of deposit were purchased at a discount of 10½ per cent., and the issuing bank was solvent, *held* not sufficient to excite suspicion and require inquiry as to the funds evidenced by them.

**5. Bills and notes ⬦354—Rate of discount at which commercial paper must be offered to excite suspicion and require inquiries stated.**

For the discount at which commercial paper is offered to excite suspicion and require inquiry on the part ·of the purchaser, rate of discount must be so great as to impel the inference that negotiation is fraudulent or in some way illegal or unauthorized.

**6. Bills and notes ⬦151—That certificates of deposit do not bear interest will not constitute them nonnegotiable.**

That certificates of deposit do not bear interest will not constitute them nonnegotiable.

### On Motion for Rehearing.

**7. Banks and banking ⬦152—Provision in certificate of deposit that no interest shall be allowed after maturity protects issuing bank from paying interest only until demand.**

Provision in certificate of deposit that no interest shall be allowed after maturity protects issuing bank from paying interest only until demand is made, and, where demand is refused without legal cause, bank is chargeable with interest thereafter.

**8. Banks and banking ⬦152—Bringing of suit constitutes demand for payment of certificate of deposit.**

Bringing of suit to recover amount of certificate of deposit constitutes a demand for payment.

Appeal from District Court, Bastrop County; R. J. Alexander, Judge.

Suit by the Security State Bank & Trust Company against the Merchants' & Farmers' State Bank. From a judgment for defendant, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Ingrum, Smith & Gulley, of San Antonio, for appellant.

Hart, Patterson & Hart, of Austin, Maynard & Maynard, of Bastrop, and Webb & Webb, ·of Elgin, for appellee.

McCLENDON, C. J. The Security State Bank & Trust Company of San, Antonio, Tex., which will be referred to as the trust company, brought this suit against the Merchants' & Farmers' State Bank of Elgin, Tex., which will be referred to as the bank; to recover the amount of five certificates of deposit, issued by the bank in favors of Planters' Bonded Warehouse Company, which we will denote the warehouse company. The trust company alleged that it acquired the certificates in due course of business, before maturity, for value, and upon proper indorsement. Several parties intervened in the suit and sought to bring in other parties, but these interventions were severed, and the case as finally tried was solely between the original parties. The defenses urged by the bank to the certificates were, in substance, that the funds represented thereby constituted special deposits to be paid out only upon conditions which had not happened, that the certificates were not negotiable, and that the bank was not an innocent holder, in that it had knowledge of these defenses or of such facts and circumstances as to require inquiry, which, if diligently pursued, would have led to such knowledge. There was a trial before the court without a jury, resulting in judgment for the bank. From this judgment the trust company has appealed.

The allegations of the bank's answer to the effect that the funds represented by these certificates constituted special deposits, and that the conditions under which they were so deposited had not been fulfilled, are correctly summarized in the following statement from appellant's brief:

"That said Planters' Bonded Warehouse Company, was, at the time of the issuance of said certificates of deposit, a copartnership or asso-

ciation, consisting of A. O. Sarvis and various others [named in said answer], doing business under articles of agreement and declaration of trust, recorded in Dallas county, Tex.; that the agents and representatives of said Planters' Bonded Warehouse Company came into the vicinity of Elgin, and obtained from Sellstrom Hardware Company, and a large number of other individuals and business concerns, notes and cash in payment for subscriptions for stock in a corporation which it was agreed was to be organized by the said persons constituting the said Planters' Bonded Warehouse Company, and which corporation was to build and operate a cotton warehouse in the town of Elgin, and various other places in the state of Texas; that the sums and notes so paid and given for said stock were agreed to be placed, and to remain, in trust in the defendant bank until the said corporation was actually organized and said stock issued, and until a cotton warehouse should be built, according to the plans and specifications exhibited and agreed upon, in the town of Elgin; that said funds were to be withdrawn from the bank for no other purpose than for the construction of such warehouse, and were to remain in the bank until such warehouse shall have been constructed, and said corporation organized, said funds to be placed and remain in the bank as a 'special deposit' under the conditions and for the purpose aforesaid; that the defendant bank cashed said notes given by the said subscribers for stock and accepted on deposit the proceeds thereof and the cash paid upon such subscriptions, and issued to Planters' Bonded Warehouse Company the certificates of deposit herein sued upon, 'payable six months, six months, and seven months after date without interest,' with the distinct understanding and agreement that said money was not to be withdrawn from said bank until said warehouse was built, and the stock issued; that said warehouse had never been built, and said corporation never organized, and said stock never issued, and that the whole project, in so far as it concerned said Planters' Bonded Warehouse Company, the agents, representatives, and trustees thereof, was simply to defraud the said subscribers out of their money, with no intention of carrying out or performing any of the promises or agreements made to obtain said money or notes; that the plaintiff bank purchased said certificates of deposit with actual and constructive notice of the circumstances under which said certificates of deposit were issued and of the special agreement, so alleged, that the funds represented by said certificates of deposit constituted a 'special deposit,' and were not to be withdrawn from the said bank except under the conditions so alleged to have been agreed upon."

For the purposes of this case it may be conceded that these allegations were established, and that the defense thus pleaded would defeat recovery upon the certificates in the hands of the original payee, warehouse company. The only remaining questions raised by the appeal are those involved in the contentions of appellee to the effect that the certificates are not negotiable, and that the trust comany was not an innocent holder for value before maturity.

The certificates in question were all made out upon the same form; the first certificate reading:

"No. 1231.                                    $600.00.
"Elgin, Texas, April 15, 1921.

"This Certifies that Planters' Bonded Warehouse Company has deposited with Merchants' & Farmers' State Bank Guaranty Fund Bank exactly six hundred dollars—exactly exactly exactly—dollars payable to the order of themselves in 7 months after date with interest at the rate of none per cent. per annum from date to maturity on return of this certificate properly indorsed.         Earl Strauss, Cashier.
"No Interest After Maturity."

The remaining four certificates bore date and were in amount respectively, as follows: April 27, 1921, $700; April 30, 1921, $600; May 6, 1921, $900; May 21, 1921, $1,100. In all other respects these four certificates were identical with the one quoted. The first four of these certificates were indorsed: "Planters' Bonded Warehouse Co., by A. A. Camerer," and the fifth: "Bonded Warehouse Co., by Dale C. Koon."

The declaration of trust of the Bonded Warehouse Company, under which the concern operated, named A. O. Sarvis as the trustee. The agreement created or attempted to create what is commonly known as a Massachusetts or common-law trust, in which the holders of certificates are exempt from any liability whatever, further than the amount they subscribe to the stock. The purpose of the trust was "to engage in the business of the storage and warehousing of agricultural products and other personal property for hire," and a number of other kindred purposes. The trustee was given practically unlimited power in carrying out the trust, and specifically:

"To employ all necessary and proper agents, employés, servants, brokers, attorneys, or counsel to carry into effect the purposes of the trust herein created, and to protect and preserve the same and to provide for the payment out of the trust estate of the compensation, fees, commissions, or expenses incurred in the management thereof."

The testimony of the president of the trust company, concerning which there was no dispute, was to the effect that these certificates were purchased by the trust company on April 18, May 2, May 7, and May 23, 1921, respectively, at 10½ per cent. discount; that at the time they were purchased Camerer and Koon presented powers of attorney, executed by Sarvis, authorizing the indorsements on behalf of the warehouse company; that inquiry was made by letter to Dallas to learn if Sarvis was in fact trustee of the concern, which resulted in ascertaining that he was; that copy of the trust agreement and these powers of attorney were submitted to the attorney for the bank to ascertain the authority of Koon and Camerer to negotiate the

certificates, and upon such attorney's opinion in the affirmative the certificates were bought without any knowledge or information on the part of the trust company that any defenses whatever existed against the certificates. These powers of attorney were introduced in evidence, and in our opinion clearly authorized negotiation by Koon and Camerer of the certificates. The power of attorney in favor of Camerer read as follows:

"Dallas, Texas, March 28, 1921.

"To Whom it May Concern: The bearer hereof, Mr. A. A. Camerer, is a duly authorized representative of the Planters' Bonded Warehouse Company, of Dallas, Texas, and is hereby authorized to make and sign contracts or to do any and all things pertaining to this company, as such representative, including the indorsements of checks, drafts, notes, certificates of deposit, etc. Any contracts or agreements made by Mr. Camerer will be considered binding upon this company.

"Planters' Bonded Warehouse Company,
"By A. O. Sarvis, Trustee."

The Koon power of attorney was in the same language, and each bore the company's official seal.

We gather from appellee's brief that the ground upon which it is contended that the certificates are not negotiable is that the provision therein that payment is to be made "on return of this certificate properly indorsed" brings them within the following provision of section 4 of the Uniform Negotiable Instruments Act (Vernon's Civ. St. Supp. 1922, art. 6001—4):

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

[1] Under the law merchant, independently of the Uniform Negotiable Instruments Act, it was generally held that an instrument otherwise negotiable was rendered nonnegotiable by being payable only upon some contingency which might or might not happen; but by the great weight of authority it is held that the provision that payment should be made upon return of the instrument properly indorsed does not constitute such contingency, and therefore does not render the instrument nonnegotiable. There is some authority to the contrary. On the other hand, a number of decisions hold that this language imports a promise to pay the amount of the certificate to the indorsee, and is in effect a promise to pay to the order of the payee, thereby rendering it negotiable, even if the expression "to order" is not added after the word "payable." This question is ably presented with full citation of authorities in an annotation to the case of Easley v. East Tenn. Nat. Bank, 138 Tenn. 369, 198 S. W. 66, L. R. A. 1918C, 691 et seq., to which we refer. The question has been decided in this state in accordance with the weight of authority. First Nat. Bank v. Greenville Nat. Bank, 84 Tex. 40, 19 S. W. 334; Clark v. Holder (Tex. Civ. App.) 247 S. W. 699; First State Bank v. Hidalgo Land Co. (Tex. Civ. App.) 257 S. W. 275. We hold the certificates negotiable in form.

[2] The next contention of appellee is that appellant was charged with notice or put upon inquiry, which if properly pursued would lead to knowledge of the special character of the deposit by reason of the fact that it had knowledge that the warehouse company was a common-law trust, or joint-stock company, formed for the purpose of erecting warehouses in the cities and towns of the state, and that the certificates of deposit evidenced funds collected by it from subscribers for the purpose of erecting warehouses.

This contention is wholly without merit. If it were sustained, it would practically destroy the negotiability of all instruments where the indorsee had knowledge that the maker was engaged in some character of business which might render necessary the assumption of obligations with reference to the funds in his hands. There is no evidence whatever that appellant had any knowledge of the source of the fund which formed the consideration for the certificates. There was nothing in the certificates to indicate such source. The recitals therein were that the amount stated had been deposited by the warehouse company. The natural inference to be drawn from the certificates with reference to the fund is that, being deposited by the warehouse company, it was its property. The issuance of unconditional certificates of deposit would indicate that, so far as the issuing bank had knowledge or was concerned, this ownership was absolute and unconditional.

While there is no proposition in appellee's brief to that effect, it is contended therein in argument that knowledge on the part of appellant of the following facts and circumstances was sufficient to put appellant upon inquiry, which, if properly pursued, would lead to knowledge of the special or trust character of the deposit; that A. O. Sarvis was the trustee of the warehouse company; that the certificates did not belong to Koon or Camerer, who were agents appointed by the trustee; that the appellant purchased them at a discount of 10½ per cent., knowing that appellee was perfectly solvent; "the unusual wording of the certificates that they were without interest before or after maturity, and that they were not payable until a return of this certificate properly indorsed;" and "that they were payable to a trust concern whose headquarters were in Dallas, Tex., and that the sale of same was negotiated by an agent of the trustee."

We are clear in the view that knowledge on the part of appellant of all these matters, singly or combined, was not sufficient to require inquiry.

[3] The fact that appellant knew that the certificates did not belong to Koon or Camerer individually, but belonged to a trust concern with headquarters in Dallas, certainly would not require a purchaser of the certificates to inquire into the nature of the fund for which they were executed, when the agents having physical possession of the certificates also possessed powers of attorney properly executed by the trustee of the concern, clothing them with plenary authority to negotiate the certificates.

[4, 5] The fact that the certificates were purchased at a discount of 10½ per cent., and the issuing bank was perfectly solvent, was not sufficient to excite any inquiry. The purchase was made by appellant shortly after the certificates were issued, and they were not collectable until seven months after date. They were therefore not worth full face value at the time they were negotiated, however solvent the issuing bank might have been. And aside from this, they were secured only by the solvency of the issuing bank, and there is always some risk attached to the acquisition of bank paper, especially that of institutions in small cities. In order for the discount at which commercial paper is offered to excite suspicion and require inquiry on the part of the purchaser, the rate of discount must be so great as to impel the inference that the negotiation is fraudulent or in some way illegal or unauthorized.

[6] There is nothing unusual or out of the ordinary in the wording of the certificates; in fact they are upon a form which, according to the reported cases, is very commonly in use by banks throughout the country. They are in the exact language of those contained in the Texas cases above cited, except that in the case in 84 Texas the recital was that the deposit was made in checks, and for this reason alone the certificate was held nonnegotiable. Nor is there anything unusual in the fact that the certificates do not bear interest either before or after maturity. It is a common practice for certificates of this character to be made noninterest-bearing, and their issuance in this form is not, so far as we have been able to find, held to constitute them nonnegotiable. Promissory notes for bank loans very often have the interest added to the principal and do not provide for interest prior to maturity. It is a matter of common knowledge that as a rule bank deposits do not bear interest, and when agreements to that effect are made the rate is usually very low. It would be a reasonable explanation for drawing certificates in this form that interest which the bank had agreed to pay, if any, was added to the amount of deposit. At any rate, the parties had a right to enter into the transaction as represented by the recitals in the certificates, and there is nothing unusual or out of the ordinary in these recitals to re-

quire inquiry or excite suspicion. Nor is any significance to be attached to the provision that the certificates should bear no interest after maturity. They were payable at maturity, and, if presented at that time and payment was refused, the holder would be entitled to legal interest from the date of presentment. If they were not so presented, the holder would be in no better position than if they had been presented and paid and the amount carried in the form of a general deposit to the credit of the holder.

We overrule all of the contentions of appellee. Since the evidence, without conflict, showed that appellant was a bona fide holder of the certificates, judgment thereon should have been rendered by the trial court in its favor.

The judgment of the trial court is accordingly reversed, and judgment is here rendered in favor of appellant for the principal amount of each of the five certificates sued upon, together with interest on each amount from the respective maturity dates of the certificates at the legal rate of 6 per cent. per annum.

Reversed and rendered.

### On Appellee's Motion for Rehearing.

Appellee contends, among other things, in its motion for rehearing, that we committed error in any event in rendering judgment for interest on the certificates because of the stipulation, "No interest after maturity." In support of this contention appellee cites Dunlap v. Stannard, 19 Okl. 232, 91 P. 845; Billingsley v. Billingsley, 24 Ala. 518; 33 C. J. 238, 239. We have examined these authorities and believe they are not in point.

[7] The general rule is that bank deposits bear no interest until demand is made, unless there is some agreement to the contrary. The stipulation quoted above is one quite commonly used, and wherever the question has arisen it has been held that the bank is protected thereunder from paying interest only until demand is made, but that if, upon demand, payment is refused without legal excuse, the bank is chargeable with interest. We think clearly this is the proper rule to apply. The bank has contracted to pay at or after maturity upon presentation of the certificates properly indorsed. A breach of that contract gives immediate right of action and a right on the part of the holder of the certificates to collect interest for the wrongful withholding of the money due him. The following cases support this view: Baxley v. Gaskins, 145 Ga. 507, 89 S. E. 516; Citizens' Nat. Bank v. Brown, 45 Ohio St. 39, 11 N. E. 799, 4 Am. St. Rep. 526; Verdi v. Helper State Bank, 57 Utah, 502, 196 P. 225, 15 A. L. R. 641.

[8] The record shows that the first certificate was presented and demand refused, but the date is not shown; and the record is

silent as to whether the other certificates were ever presented. The suit was filed on December 26, 1921, and in effect amounted to a demand for payment, and interest should be allowed from that date. Accordingly the judgment heretofore entered is modified, so as to provide that interest on the amount of the several certificates be calculated from December 26, 1921. In all other respects the motion for rehearing is overruled.

Judgment modified as to interest

Motion overruled.